Cornelison v. Commonwealth.

---

CASE 78—INDICTMENT—DECEMBER 11.

## Cornelison v. Commonwealth.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. AN ASSAULT AND BATTERY IS PUNISHABLE in this State by either fine *or* imprisonment, or both fine *and* imprisonment, at the discretion of the jury, this being the common law punishment, which, in the absence of any statute upon the subject, must control. Nor should any limitation be placed upon the discretion of the jury in fixing the punishment. If the jury abuses its discretion by inflicting a cruel punishment, it is within the power of the court to set it aside.

    A fine of one cent, and imprisonment for three years, for an assault with a cane and a cow-hide, is held not to have been cruel or excessive punishment.

2. PUNISHMENT FIXED BY JURY.—In all cases where the citizen is indicted for a criminal or penal offense involving his life or liberty, or

Cornelison v. Commonwealth.

subjecting him to a fine, he is entitled to a trial by jury, and that tribunal must not only find him guilty, but also fix the punishment, although the common law may control as to the punishment, and the punishment may have been fixed at common law by the judge and not by the jury.

3. THERE ARE BUT THREE KINDS OF PLEAS to an indictment: 1. Guilty; 2. Not Guilty; and 3. Former Conviction or Acquittal. It was, therefore, proper in this case for the court to refuse to allow the defendant to file a special plea.

4. ALTHOUGH THERE MAY BE A PLEA OF "GUILTY," the Commonwealth to increase, or the defendant to mitigate, the punishment, has the right to place the facts before the jury.

5. EVIDENCE.—It was competent for the Commonwealth to prove the reasons assigned by the accused for making the assault with which he was charged, and then to show that they had no foundation in fact.

6. SAME.—The defendant having been punished by imprisonment only, it is not material to inquire whether the court should have permitted to go to the jury the pecuniary condition of the accused and the size of his family, as the testimony, if admitted, could not have mitigated the punishment.

7. SAME.—It was not error to admit as evidence the statements of physicians as to the manner in which the injured man was affected, although the recital as to his symptoms came from him.

8. THE MANNER IN WHICH THE GRAND JURY WAS SELECTED is not the subject of revision by this court.

Judge LEWIS dissenting. Judge HOLT not sitting.

WM. LINDSAY FOR APPELLANT.

1. There is no such *statutory* offense in Kentucky as assault and battery. If that offense exists in Kentucky, it is in virtue of the common law, and must be punished according to the common law.

2. A battery is an assault in which force is applied by material agencies to the person of another. (Stephens' Dig. Crim. Law, art. 241; Wharton's Am. Crim. Law, sec. 617.)

3. At the common law, assault and battery was divided into two classifications—a common assault and an assault with intent to commit a felony. Each and both classes were considered as misdemeanors, and punished as such. (Wharton's Am. Crim. Law, sec. 648.)

4. While an assault and battery with intent to commit a felony was punished by fine and imprisonment, a common assault and battery was punished by fine alone. (Hawkins' P. C., vol. 1, p. 110, sec. 4; Bacon's Abridgment, vol. 1, p. 378, title "Assault and Battery," sec. D.; Commonwealth v. English, 2 Bibb; Commonwealth v. Simmons, 6 J. J. Mar., 614, 615.)

As showing that this was the direct question decided in the case last

Cornelison v. Commonwealth.

cited, see Duncan v. Commonwealth, 6 Dana, 296, and Commonwealth v. Martin, 6 J. J. Mar., 616.

5. As showing the highest punishments ever inflicted in this State for the offense of assault and battery, with the approval of a court of revisory jurisdiction, see Chandler v. Commonwealth, 1 Bush, 42; March v. Commonwealth, 12 B. M., 25; Bosleys v. Commonwealth, 7 J. J. M., 598.)

In the case of Dickerson v. Commonwealth, 2 Bush, 2, the only question considered was as to the sufficiency of the indictment.

6. As the higher offenses of riots, routs, breaches of the peace, &c., can be punished only to the extent of a fine of one hundred dollars, and of imprisonment for the term of fifty days, it would seem to follow, independent of the authorities cited, that the lesser offense of assault and battery can not be punished by both fine *and* imprisonment without limit.

7. The offense charged in the indictment is a common assault and battery, and it cannot be enlarged into a felonious assault by words of description showing an intent to kill. (Dickerson v. Commonwealth, 2 Bush, 2; Bishop's Criminal Procedure, vol. 2, sec. 63.)

8. Aggravation does not affect the punishment to be inflicted in this State for a common assault and battery otherwise than as it influences the jury, except in cases regulated by statute.

9. Under our form of government no man can be punished for any offense at the unbridled discretion of a jury. (Kentucky Bill of Rights; Bouvier's Law Dictionary, vol. 1, p. 482; Lord Mansfield in Rex v. Wilkes, 4 Burrow, 2539; Rooke's case, 40 Elizabeth; Rapalje & Laurence's Law Dictionary, vol. 1, p. 699; Cooley's Const. Limit., p. 406, 4th ed.; State v. Danforth, 3 Conn., 115; Archbold's Crim. Prac. and Pleading, vol. 1, p. 688.)

10. If we are to punish a common assault and battery "as and by the common law as heretofore," then the extent of the punishment is not to rest in the discretion of the jury, but in the discretion of the court. (Bishop on Criminal Law, vol. 2, sec. 394.)

11. The common law of a general nature as it existed prior to 4th year of James I., and no other, was ever in force in Kentucky. (Ray v. Sweeney, 14 Bush, 1.)

Blackstone, Russell and Roscoe all wrote more than a century and a half after the date indicated, and treated of the common law as it existed at the date of their several treatises.

12. The fine imposed should bear some relation to the ability of the party to pay, and the imprisonment to the effect it will probably have upon his estate and his family. (Cooley's Const. Limit., 406, 407.)

It was error, therefore, to exclude evidence as to the defendant's financial condition, and as to the size of his family.

13. The testimony of Judges Bowden and Richards was inadmissible. The

Cornelison v. Commonwealth.

Commonwealth, after having introduced evidence tending to extenuate the conduct of the accused, can not make that fact the pretext for the introduction of other evidence, which, without it, would be clearly inadmissible.

14. The attempted imposition of imprisonment was unauthorized by law, and to that extent the verdict should be rejected as void. But the return of guilty was responsive to the issue, and the assessment of the fine within the lawful province of the jury, hence the court should accept the verdict to that extent, and enter up its judgment accordingly. (Kouns v. Grayson, 2 Bibb, 286; Patterson v. U. S., 2 Wheaton, 225; Tuley v. Mauzey, 4 B. M., 7.)

SAME COUNSEL IN PETITION FOR REHEARING.

1. An assault and battery which involves a breach of the peace, and is embraced by that term, has its punishment prescribed by the 4th section of article 19, chapter 29, General Statutes, and, hence, can be punished only as therein provided. (Gen. Stats., chap. 29, art. 1, sec. 3; *Broaddus Dev. v. Broaddus Heirs*, 10 Bush, 308.)

2. When it is sought to enforce, as a rule of common law, the power of the court, through the verdict of a jury, to punish a misdemeanor with fine and imprisonment without limit, the Commonwealth should be required to show that such was the established and recognized law of England prior to the 24th of March, 1607, and any doubt upon this proposition ought to be resolved in favor of the liberty of the citizen. (Ray v. Sweeney, 14 Bush, 10; M. & B. Stat., vol. 1, p. 612.)

3. As illustrating the difficulty of determining how far the common law had been changed by English statutes up to 1607, and the provisions of those statutes, see Henning's Statutes, vol. 13, pp. 8, 23, 131 and 259.)

4. The legislative enactments and the judicial decisions of our own State, in the latter part of the past and the beginning of the present century, show a general concurrence of opinion that, by the common law in force in Kentucky, the offense of assault and battery was punishable only by fine, (M. & B. Stat., vol. 1, p. 533; Monte v. Commonwealth, 3 J. J. Mar., 158; M. & B. Stat., vol. 1, p. 130; Mitchell v. Commonwealth, 3 J. J. Mar., 630; Commonwealth v. Alsman, 5 J. J. Mar., 28; Commonwealth v. Simmons, 6 J. J. Mar., 614; Commonwealth v Martin, 6 J. J. Mar., 616.)

And in no case *in which the question was raised* has any judgment punishing assault and battery by imprisonment been affirmed by this court.

5. The English statutes show that assaults and batteries were not punishable at the common law by fine and imprisonment without limit, otherwise those statutes had the effect of diminishing the punishment of the nefarious misdemeanors against which they were directed, instead

Cornelison v. Commonwealth.

of increasing the punishment as was intended. (East's Crown Pleas, vol. 1, pp. 423, 425 and 506; 9 Anne, ch. 15, sec. 8.)

And so with a Kentucky statute. (Bullitt & Feland's Gen. Stats., ed. 1883, p. 365.)

6. The instructions given the jury were in conflict with the constitutional provision declaring that absolute arbitrary power over the liberty and property of the citizen does not reside in any department of government.

7. Indefinite punishments are fraught with danger, and ought not to be admitted unless the written law should authorize them. (State v. Danforth, 3 Conn., 315; Cooley's Const. Limit., sec. 329, 4th ed., p. 407.)

WOOD & DAY, R. A. MITCHELL, H. M. WOODFORD, J. H. HAZELRIGG, S. S. GAITSKILL, H. CLAY McKEE, M. S. TYLER, W. P. THORNE and TURNER & SON on same side.

1. The act of 1802 and the Revised Statutes and General Statutes embrace and provide a punishment for assault and battery, and limit it to not exceeding $100 fine and fifty days' imprisonment. (1 vol. M. & B., 128-30, and 533; Loughborough's Statutes, vol. 3, 36-7, and 520-23; 2 vol. M. & B., 1277, 1390 and 1391; Rev. Stats., chap. 28, art. 1, sec. 3, and art. 18, sec. 6; Gen. Stats., p. 318; *Ibid.*, chap. 29, art. 19, sec. 4; Ely v. Thompson, 3 A. K. Mar., 70; Commonwealth v. Miller, 5 Dana, 320; Commonwealth v. Foster, 3 Met., 1; Rev. Stats., vol. 1, 408; Gen. Stats., 349-50; White v. Commonwealth, 10 Bush, 557; Commonwealth v. Hawkins, 11 Bush, 603; Commonwealth v. Bright, 78 Ky., 238.)

2. The Legislature, having limited the punishment for more heinous offenses, could not have intended to give to a jury unlimited discretion to fine and imprison under an indictment for an assault, especially when the limitations of both the Federal and State Constitutions as to punishments are considered. (Const. U. S., art 8 Bill of Rights; Const. of Ky., art. 13, sec. 17.)

3. The common law was in force in Kentucky at the time of this indictment and trial only as to jurisdiction, and not as to punishment.

4. By the common law the punishment for an assault and battery was by *fine* only. (Hawkins' Pleas of the Crown, vol. 2, p. 110; Bacon's Abridgment, vol. 1, letter D, page 248; Tomlins Jacobs' Law Dictionary, vol. 1, p. 136; Commonwealth v. Simmons. 6 J. J. Mar., 614-15; Commonwealth v. Martin, 6 J. J. Mar., 316-17; Commonwealth v. Brown, 3 J. J. Mar., 594; Commonwealth v. Mitchell, 3 J. J. Mar., 360; Commonwealth v. Allsman, 5 J. J. Mar., 28.)

4. At common law the jury only found the guilt or innocence of the accused and the grade of the offense, and the court assessed the punishment. Therefore, if the punishment in this case was not limited by

statute, the court erred in submitting its extent to the jury. (Bishop's Criminal Law, vol. 1, sec. 934; *Ibid.*, vol. 2, sec. 43; Norton v. State, 14 Texas, 387; 3 Chitty's Criminal Law, 831; Greenleaf on Evidence, Redfield's ed., vol. 2, sec. 84; Wharton's Am. Crim. Law, vol. 2, sec. 1287, book 4, title Assaults; Cooley on Const. Limit., 4 ed., p. 406.)

5. If the common law was fully in force, that part of the verdict which assesses imprisonment is absolutely void, and it was the duty of the court upon the verdict to have rendered judgment for one cent and costs and no more, and the judgment should be reversed, and cause remanded with directions to enter such a judgment. (Civil Code, sec. 328; Kouns v. Grayson, 2 Bibb, 237; Tully v. Mauzey, 4 B. M., 7; Burns v. Allen, 2 B. M., 247.)

6. No reported case can be found where a defendant was ever punished for assault and battery by a verdict of imprisonment.

7. The indictment charges appellant with only a misdemeanor. The offense charged can not be changed by circumstances, motives and intentions, or acts named in the body of the indictment. (Criminal Code, sec. 264; 2 Wharton's Crim. Law, sec. 1287.)

8. The court erred in refusing to instruct the jury that even if appellant was mistaken in supposing that he had recently received great provocation at the hands of Reid, yet if, at the time of the assault, he had reason to believe, and did believe, that these circumstances of provocation existed, the jury could consider this in extenuation.

9. The statement of Reid's physician as to his patient's recital of his symptoms was hearsay evidence and incompetent.

10. The court erred in rejecting evidence as to appellant's financial condition and the size of his family. (Cooley's Const. Limit., 4th ed., p. 406; State v. Danforth, 3 Conn., 115; Gore v. Chadwick, 6 Dana, 478; L., C. & L. R. R. Co. v. Mahoney, 7 Bush, 237.)

11. The formation of the grand jury was illegal and void, and the court erred in refusing to set aside the indictment. For this error appellant is entitled to a reversal. (Crim. Code, secs. 347 and 353.)

HARGIS & EASTIN FOR APPELLEE.

1. There is in Kentucky no statutory punishment for assault and battery, and, therefore, the punishment therefor is "as and by the common law."

2. *Aggravated* assaults are punishable at common law by fine or imprisonment, or both, in the discretion of the jury; and, therefore, assaults and batteries are thus punished, as a simple assault may be aggravated by an actual battery, whether or not that battery involves a purpose to kill the beaten person. (East's Pleas of the Crown, vol. 1, p. 404, chap. 8; Blackstone's Com., 4 book, chap. 15, p. 216; Bishop's Criminal Law, vol. 2, secs. 67 and 71; Commonwealth v. Barlow, 4 Mass., 439; People v. Wilson, 9 Cal., 259; Commonwealth v. McLaughlan,

Cornelison v. Commonwealth.

12 Cush., 612; Bishop's Criminal Law, vol. 2, secs. 714, 719, 724, 551, 552, 627 and 657; Russell on Crimes, vol. 1, p. 760; Commonwealth v. Randall, 4 Gray, 36; Dickerson v. Commonwealth, 2 Bush, 2; Chandler v. Commonwealth, 1 Bush, 42. In this case see instructions in original record; Usher v. Commonwealth, 2 Duv., 295.)

Simmons v. Commonwealth, 6 J. J. Mar., was the case of a simple assault.

3. There is but one offense known by the name of "assault." It may be simple or aggravated in its nature, and of the quality of the assault the jury are the sole judges under the guiding control of the court. (Civil Code, sec. 263.)

4. It is the province of the jury to fix the punishment where it is not fixed by law. (Crim. Code, sec. 258.)

WM. J. HENDRICK ON SAME SIDE.

1. The common law is in force in Kentucky to-day where our statute law is silent. (Gen. Stats., chap. 29, sections 1, 2 and 3; Ibid., chap. 61, sec. 1; Lathrop v. The Commercial Bank, 8 Dana, 114; Gregory v. Commonwealth, 2 Dana, 418.)

2. There is no statute in Kentucky providing for the punishment of assault and battery. That crime is not included in "breaches of the peace," as used in article 19 of chapter 29 of the General Statutes. (Commonwealth v. Miller, 5 Dana, 320.)

3. The decision in White v. Commonwealth, 10 Bush, 557, applies only to those offenses which constitute a breach of the peace and nothing more, and has no application to offenses which, while they incidentally include a breach of the peace, also constitute graver crimes known to the law.

4. The fair and natural construction of the acts of 1802 and 1800, which applies as well to section 6 of article 19, chapter 29, of General Statutes, is, that while the jurisdiction of the justice and the circuit court was concurrent, so that a judgment in one would bar a second prosecution in the other, said offenses were punished as at the common law, subject always to the limited jurisdiction of a justice when the prosecution occurred in that forum. (March v. Commonwealth, 12 B. M., 25; Chandler v. Commonwealth, 1 Bush, 42.)

The reasoning in White v. Commonwealth is at variance with the former decisions of the court.

5. Even if it can be said that the Legislature has provided a punishment by statute for a simple assault and battery, it certainly has failed to provide a punishment for "an assault and battery with an intent to wound and kill." This offense can not be included in any of those described in section 2 of article 6 of chapter 29, General Statutes, since the weapon used was not a "deadly weapon" within the meaning of the statute. (Commonwealth v. Branham, 8 Bush, 387.)

Cornelison v. Commonwealth.

6. The offense charged in the indictment—an aggravated assault and bat-
   tery—is a common law offense. (Bishop's Crim. Procedure, vol. 2,
   sec. 63, and cases cited; Bishop's Crim. Law, vol. 1, secs. 940-945;
   *Ibid.*, vol. 2, secs. 56-62, 6 ed.; 1 East's P. C., 406, 407; Russell on
   Crimes, 3d Eng. ed.. 760; Desty's Am. Crim. Law, sec. 130, and
   authorities cited; Archbold's Crim. Proc., 7th ed., vol. 2, p. 67; Black-
   stone, book 4, sec. 215, Sharswood's ed.; 1 Hawkins' P. C., 65.)

7. Even if we could find no precedent for this particular form of an indict-
   ment, the common law would not be at a loss for a penalty or a form
   of indictment by which to prosecute the offender.   (Greenhuff's case,
   2 Swinton, 236.)

8. The offense charged is a misdemeanor at common law, and, like all such
   offenses, punishable by fine or imprisonment, or both, at the discre-
   tion of the jury. (Desty's Am. Crim. Law, pp. 128 and 438; Ex parte
   Max, 44 Cal., 580; Northampton's case, 12 Coke, 733; Beecher's case,
   8 Coke. 59; U. S. v. Coolidge, 1 Gall., 488; Bishop's Crim. Law, 6th
   ed., vol. 2, secs. 55 and 56; vol. 1, secs. 940, 945, citing Commonwealth
   v. Barlow, 4 Mass., 439; Murphy v. Commonwealth, 23 Gratt., 960;
   Archbold's Crim. Proc., vol. 2, p. 66; Brown and Headley's Commen-
   taries on the Laws of England, vol. 2, p. 493; Regina v. Stopford, 11
   Cox, 643; Harris' Crim. Law, p. 154.)

P. W. HARDIN, ATTORNEY GENERAL, H. L. STONE AND JOHN
RODMAN OF COUNSEL ON SAME SIDE.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The following indictment was returned into court
by the grand jury of Montgomery county, charging
that the appellant, John J. Cornelison, did "unlaw-
fully, willfully and maliciously, and with the intent
to wound and kill Richard Reid, on and upon the
person of said Reid make an assault and battery
with a cane, stick and cowhide, and did then and
there unlawfully, willfully and maliciously, with the
intent aforesaid, strike, beat, bruise and wound him,
the said Reid, with a cane, stick and cowhide, and
inflict upon his head and body grievous and danger-
ous blows, whereby the said Reid was cruelly and
dangerously beaten and wounded, and his life greatly

endangered, and against the peace and dignity of the Commonwealth of Kentucky."

To this indictment the appellant pleaded not guilty, and the jury, after hearing the testimony, returned into court the following verdict: "We of the jury, find the defendant guilty, and fix his punishment at a fine of one cent and costs, and imprisonment in the county jail for three years."

Before proceeding to the consideration of the principal questions made by the defense, the court below having overruled the motion for a new trial, it is necessary to notice some of the rulings of the court made before the plea of not guilty had been entered. A jury having been empaneled, the defendant offered to file a written plea, disclaiming any intention to kill or seriously injure Judge Reid, at the same time confessing the assault and regretting its occurrence, filing a plea of guilty, and asking that the verdict be tempered with mercy. The court, at the instance of the attorney for the State, refused to permit the plea to be filed. The accused then offered to file this plea: "The defendant pleads guilty of the offense charged in the indictment, viz., a malicious assault and battery." The attorney for the State again objected, but consented that it might be filed, excluding the words "a malicious assault and battery." The objection to the plea was sustained, and the defense then moved to strike from the indictment the words "with the intent to kill and wound Richard Reid." This motion was overruled, and the plea of not guilty entered; but before any witnesses had been examined this plea was withdrawn, and the following plea filed: "The

defendant pleads guilty of the offense charged in the indictment." After this plea had been entered, the Commonwealth's attorney had a witness called for examination, the accused objecting on the ground that no issue of fact had been made for the jury to determine; but the court, adjudging that the State had the right to place the facts before the jury, although the plea of guilty had been entered, the defendant then asked to withdraw his plea, and offered to plead not guilty. This the court refused, and the Commonwealth proceeded with the examination of the witnesses. To all of this the defendant objected, and by proper exceptions saved the questions. After the evidence on both sides had been heard by the jury, the defendant, on his motion, was allowed to withdraw his plea of guilty, and enter a plea of not guilty, upon which the verdict was returned as already stated.

We perceive no error in regard to the preliminary motions made by the appellant in offering to file the various pleas, or any evidence expressly or by inference of any arbitrary action by the court in refusing to permit a special plea to be filed, or a departure from the ordinary mode of pleading provided by the Code. There are but three kinds of pleas to an indictment.

1. A plea of guilty. 2. Not guilty; and 3, a former conviction or acquittal.

When the plea of guilty has been entered, the Commonwealth to increase, or the defendant to mitigate the punishment, has the right to introduce testimony to enable the jury to render a true verdict when making inquiry as to the extent of the punishment. A plea special in its character, for the purpose of avoiding such inquiry, should not be allowed to be filed.

It is insisted by counsel that, after the State had proven the admissions of the accused as to the character of the assault, and his reasons for making it, it was incompetent to show that the words in red pencil were made by Judge Bowden and not by Reid. That no issue could be made as to the mistaken belief of the accused after the reasons assigned by him had gone to the jury at the instance of the prosecution. We think it was competent and clearly relevant to the issue. If true, it was a mitigating circumstance to be considered by the jury; if untrue, the appellant was acting at his peril in making an assault for reasons that did not exist, and the Commonwealth had the right to prove the reasons assigned by the accused, and then to show that they had no foundation in fact.

Whether the court should have permitted to go to the jury the pecuniary condition of the accused and the size of his family, is an immaterial question on this appeal. He has been fined only one cent and the costs, and we know of no rule, where a party has been guilty of a public offense for which imprisonment is the punishment, subjecting him to a milder punishment than would be adjudged against another because the former has a family or is without any estate.

Nor do we see any error in the statement of the physicians as to Reid's condition after the injury, or as to the manner in which he was affected, although the recital as to his symptoms came from the injured man. Nor is the manner in which the grand jury was selected the subject of revision by this court.

The testimony in this case is in substance this:

In the forenoon of the day on which the assault

was made, the witness, Col. Johnson, had invited the
defendant, Cornelison, to the law office formerly occu-
pied by Reid & Stone, but at the time the office of
Stone, to consult about taking certain depositions.
Reid was in the office at the time, and Cornelison
read a copy of a letter that had been written, as Reid
supposed, for the purpose of injuring him in the can-
vass he was then making for Appellate Judge.   Reid,
upon hearing the letter read, asked for some papers
that the witness (Johnson) had, to enable him to
reply to the letter.   The papers were in the valise of
the witness, and the valise was at the office of Cor-
nelison.   Cornelison told Reid to go to the office and
he would show them to him.   Reid responded that he
had an engagement for the forenoon, but would call
at defendant's office as he returned from dinner at
two o'clock.   The assault was committed on the even-
ing of that day between two and three o'clock—the
witnesses testifying that they saw Reid running to
the store of Bean, and while there the defendant lash-
ing him over the head and shoulders with a cowhide.

The account given of the attack upon Reid in the
law office of the defendant, as he stated to witnesses
who have testified on the trial, is as follows : The ac-
cused said that Reid, who was his counsel in a certain
case, had betrayed him, and induced the other Judges
(Reid being then one of the Superior Court Judges)
to render a decision against him affecting his char-
acter, and he had the evidence of it in his own hand-
writing.   That at the time of the attack he presented
the writing to Reid, and asked him if he had written
it, to which he responded *no.*   The defendant then

told him he was a liar, and, after some words had passed, struck. him once with his cane over the head, and attempted to inflict other blows that were warded off by Reid. When Reid attempted to get away he (the defendant) pulled a cowhide from under his clothes, and struck him about fifty licks. Reid then made for the door; but defendant headed him off and forced him under the stairway in a corner of the office, and then struck him about twenty-five more blows with the cowhide. That Reid made no resistance, but begged, and, finally escaping, was pursued by the defendant into the street and into Bean's store, where the lash was again applied. Cornelison had applied for a rehearing in the case where the judgment had been adverse to him, and found on the margin of the record in that case, written with a red pencil, the words "why," "his fee," and "to his own statements." He believed the writing was that of Reid's, and exhibited it to two or more persons, before the assault was made, who were familiar with his handwriting, who stated to him, and also on the trial of this case, that they believed it was Reid's handwriting. He thought from the marginal notes that his counsel had proven treacherous, and had the case decided against him. Judges Bowden and Richards, who were associated with Judge Reid on the bench, the one (Bowden) stated that he made the marginal notes—that they were written by him. Judge Richards states that those marginal notes are in Bowden's handwriting, both testifying that Judge Reid had said nothing about the case until after the opinion had been delivered.

The principal objection made by counsel for the accused to the judgment of conviction, and the one to which the attention of this court has been particularly called, arises from the instruction given at the instance of the attorney for the State, authorizing the jury, upon their finding the defendant guilty, "to fix his punishment by fine in any sum, or by imprisonment in the county jail for any period of time, one or both, at their discretion."

It is insisted—1. That by the rule of the common law a common assault or a common assault and battery was punished by fine only. 2. That if the common law authorized imprisonment as well as the imposition of a fine, such a doctrine was not in force in this State at the time of the commission of the offense, having been repealed by statute, and if in force, the judge imposed the punishment at common law and not the jury, and for that reason the jury had no power to fix the punishment.

In considering these questions, it is proper to determine, in the first place, whether, by the rule of the common law the punishment for an assault and battery was by fine only ; for if so, a reversal necessarily follows.

All indictable misdemeanors were punished at common law by fine and imprisonment, one or both, at the discretion of the judge; and where the private injury resulted in a public wrong, the party charged with the offense, if found guilty, his punishment was fixed by the judge and not by the jury. This common law doctrine, when not in some manner modified by statute, except as to the tribunal designating the punishment,

Cornelison v. Commonwealth.

has been regarded as the law in this State since the organization of the State Judiciary, and while such a practice has become a part of our jurisprudence, and been so recognized by the circuit judges of the State as far back as the memory of the oldest practitioner goes, it is now maintained that no such common law rule ever existed.

. The judicial history of this State is certainly a persuasive if not conclusive argument on the question; but the importance of the case requires a careful review of the authorities, that the point involved may be finally settled. It has not been contended by the attorney for the State that the same judicial tribunals, as they existed at the common law in England, followed its rules of practice in the administration of justice in a government like ours. Under our State Constitution neither the life or liberty of the citizen is made to depend, when charged with crime, as to the extent of the punishment, upon the arbitrary will of the judge; but in all cases, when indicted for a criminal or penal offense involving his life or liberty, or subjecting him to a fine, he is entitled to a trial by jury, and that tribunal must not only find him guilty, but also fix the punishment.

That punishment, when not regulated by statute, must be as and by the rule of the common law; so we perceive no reason for reversing this case, because at common law the judge and not the jury imposed the fine or fixed the term of imprisonment.

There are no degrees of the offense of assault and battery, except that, in imposing the punishment, the circumstances of the one case demand a greater pun-

ishment than the other. A mere assault is not as high an offense against the law as when accompanied with a battery, and an assault and battery, with the intent to rob or murder, is a more aggravated assault than a mere assault and battery, and it may be said in this way that there are degrees of the offense. The punishment is graded by the enormity of the offense. The one becomes aggravated by reason of the attendant circumstances, and in such a case appeals to the jury, as it did the judge at common law, for a heavy sentence or punishment. It is true, that in England some assaults were deemed so aggravated, when made upon those in high positions, as to become the subject of statutory enactment, where the party guilty lost his entire estate, and was condemned to perpetual imprisonment. We have no such law in this State, nor has the Legislature the power, if disposed, to inflict such a punishment.

The case before us is an assault and battery by one private citizen upon another private citizen—by one lawyer upon his brother lawyer—and in that light only can this case be considered.

The case of the Commonwealth v. Simmons, relied on by the defense, reported in 6 J. J. Marshall, 614, was brought to this court by an appeal, when a fine only had been imposed, and the question presented was as to the sufficiency of the indictment. This court had no jurisdiction where the punishment was by imprisonment, and in discussing the question the court held, through Chief Justice Robertson, that it was a simple assault and battery, and the punishment being a fine only, the court had jurisdiction. He quotes from Haw-

kins, P. C., to the effect, that "assaults and batteries may be punished not only by action at the suit of the injured party, but also by indictment at the suit of the king, wherein he shall be fined according to the heinousness of the offense." This quotation is from Bacon's Abridgment, 1st volume, and no further comment made by either author.

At common law the judge might fine or imprison, at his discretion, or both fine and imprison, and where no aggravating circumstances attended the commission of the offense, the judges there, as the juries here, impose the slightest penalty, which is the fine, because, in legal contemplation, a simple assault did not demand severer punishment. In this light the question was doubtless considered by the court, or the attention of the court (the question arising only on demurrer) was not called to the authorities on the subject, as is evident from the subsequent ruling of the court in the case of Usher v. The Commonwealth, reported in 2 Duvall, 394. Usher was indicted under the statute for shooting at one Morris, with the intent to kill or wound him, without inflicting a wound, the statute providing that in such a case the offender shall be fined not exceeding $500, and imprisoned not less than six nor more than twelve months. On the trial the proof showed only *an attempt to shoot*, by presenting at Morris the gun or pistol; but as there was no statute punishing the offense *of attempting to shoot*, it was held. that, as to the offense, the common law was still in force, and the circuit court, holding that as the attempt to shoot was a degree of the offense mentioned in the statute, instructed the jury that they could find the party guilty,

and fine and imprison him for a period not longer than the time fixed by the statute. The jury imposed a fine only of $266. This court, in passing on this point (Chief Justice Robertson then on the bench), held that, as to this offense, the common law punished the party by fine or imprisonment, or by fine and imprisonment, at the discretion of a jury, and that, although not limited by statute as to the punishment, due respect to the statute is required that the punishment for an attempt to shoot should not be greater than that imposed for the actual shooting, and added: "If the court erred in prescribing this limit, it was an error not prejudicial, but favorable, to the defendant."

Leaving the decisions of this court, and going to the elementary writers on the subject, Mr. Bishop, in his work on Criminal Law, vol. 2, p. 45, says: "Practically, therefore, we look upon assault as aggravated, both when it appeals to the judicial discretion for a heavy sentence, and when it constitutes a part of a higher crime. The law may, therefore, be said to deem the assault more or less enormous according to the facts of the particular transaction. And the aggravating facts, even when they do not elevate the assault to a distinct crime, are usually set forth in the indictment as a guide to the court in pronouncing sentence. If they demand, in matter of law, a higher punishment, they must be so set out." Says the same author: "Assault is misdemeanor, not felony. It is, therefore, punishable at the common law by fine and imprisonment, to which may be added bonds to keep the peace. Even aggravated assault is, at common

Cornelison v. Commonwealth.

law, a mere misdemeanor, but, by force of statutes, some of the aggravations are, in some of our States and England, made felonies." (Bishop on Crim. Law, vol. 2, p. 56.) In treating of the same subject, the author, in his first volume, page 549, says: "These offenses (assault and battery) are generally spoken of in the books as breaches of the peace, which, in a qualified sense, they are. But they are more; for the common law deems that one assumes toward another unfair ground, and gives occasion for public interposition, when wrongfully undertaking to injure him by any kind of physical force."

Russell on Crimes, vol. 1, page 1030, says: "Whenever a count for misdemeanor contains a charge of assault, accompanied with circumstances of greater or less aggravation, the jury may find the defendant guilty of a common assault, and acquit him of the circumstances of aggravation. This offense was punishable as a misdemeanor, and the punishment usually inflicted was fine, imprisonment and the finding of sureties to keep the peace."

Mr. East, in his Law of the Crown, in treating of felonious, malicious and unlawful assaults upon the person, proceeds to say that, before mentioning assaults of an aggravated kind, he will advert to what are called common assaults and batteries.

He defines such an assault to be "any attempt or offer, with force or violence to do a corporal hurt to another, whether from malice or wantonness," etc., and then proceeds: "These offenses are punishable by fine and imprisonment, and finding sureties, or other ignominious corporal penalties." (East's Crown Law, volume 1, page 406.)

Archbold's Criminal Practice and Pleading, volume 2, page 66, says as to assault: "Misdemeanor at common law. Fine or imprisonment, or both."

Says Mr. Blackstone, as to assaults and batteries, etc. : "They are indictable and punishable with fine and imprisonment, or with other ignominious corporal penalties where they are committed with any intent to murder." (Book 4, p. 216.)

Wharton on Criminal Law, volume 2, page 1287 : "An assault with intent to commit a murder is now, at common law, considered a misdemeanor only, and although it may be a high misdemeanor, it is not subject to any additional punishment as such, but only such as in the discretion of the court may be inflicted on other misdemeanors at common law."

We think it needless to multiply authority as to the punishment at common law in this class of cases, and will proceed to consider whether that punishment has been repealed by legislative enactment.

A statute of this State, embodied first in the Revised and now in the General Statutes, provides that "a common law offense, for which punishment is prescribed by statute, shall be punished in the mode so prescribed." (Gen. Stats., chap. 29, art. 1, sec. 3.)

It is maintained that the Legislature of the State, as far back as the year 1802, gave jurisdiction of riots, routs, unlawful assemblies, and breaches of the peace to justices, and limited the punishment to a fine not exceeding twenty dollars, and that an assault and battery constituting a breach of the peace, the limitation to the punishment was regulated by that statute until repealed. (Act of Dec. 21, 1802, vol. 2, M. & B., 1390.)

By a subsequent enactment of February 11, 1809, the common law in relation to riots, routs, unlawful assemblies, *assaults*, *batteries*, affrays, etc., was restored, providing that persons could be indicted and punished at common law as heretofore, and further providing that no person or persons should be twice punished for the same offense. (2 vol. M. & B., 1391).

In the year 1838 an act, entitled an act to explain the law concerning riots, routs, affrays and unlawful assemblies, provided "that on the trial of any indictment for any of said offenses, it shall be in the discretion of the jury, by their verdict, to award either fine or imprisonment, or both." (Loughborough, 520.)

Section 4, article 19, chapter 29, of the General Statutes, provides "that riots, routs, unlawful assemblies, affrays and breaches of the peace, may be punished by fine not exceeding one hundred dollars, or imprisonment not exceeding fifty days, one or both, in the discretion of a jury."

These enactments have been specially referred to, for the reason that the act of 1802 for suppressing riots, routs, unlawful assemblies and breaches of the peace, similar in its provisions (save the punishment) to the clause of the General Statutes, imposing a fine of not exceeding one hundred dollars, and imprisonment not exceeding fifty days, has been the subject of judicial construction in the case of Ely v. Thompson, 3 Marshall, 70, and the Commonwealth v. Miller, 5 Dana, 320, and again approved by this court in the case of the Commonwealth v. Bright, 78 Ky., 238.

The case of Ely v. Thompson was an action brought by a free person of color against a justice of the peace

for having, by his judgment, inflicted upon him thirty lashes for lifting his . hand in opposition to a white man, and the question presented was: Had the act authorizing such punishment been repealed by "an act to suppress riots, routs, unlawful assemblies and breaches of the peace," the act *expressly repealing all laws coming within its purview.* It was in that case held that affrays, assaults and batteries, were within the purview of the repealing act, and embraced by its provisions, and for that reason, as well as others assigned, there was no justification for the wrong perpetrated on the plaintiff.

The case of the Commonwealth v. Miller, reported in 5 Dana, 320, presented the question, whether a fine imposed by a justice for a breach of the peace was a bar to a further prosecution for assault and battery, and it was so held.

The protection of the right of personal security becomes involved in the proceeding when the Commonwealth undertakes to punish the private wrong for the public welfare; and while the State may elect to proceed for a mere breach of the peace, caused by the assault, where the fine was originally limited to twenty dollars, and now to one hundred dollars and fifty days imprisonment, yet if the indictment is for the assault and battery, the punishment as to fine and imprisonment, governed by the common law, is within the discretion of the jury.

It would be inconsistent with natural reason to say that, for an offense of this sort, the party injured is to seek redress alone by his civil action, or that in a government of law, where the Commonwea'th interposes for

the preservation of personal security, one of the absolute rights of every freeman, that any one of its citizens can apply the cowhide to the body of his neighbor, and then satisfy the demand of the State by the payment of his money for the privilege.

The punishment inflicted in all such cases should be commensurate with the wrong done, not to the individual, but to the public.

In the case of the Commonwealth v. Bright, above, this court held that "where the Commonwealth elects the offense for which she will try the accused for an act or omission, and does try him, she can not carve out another offense of the same class, but of higher degree, and try him again." Such was the effect of the decision in the case of the Commonwealth v. Hawkins, 11 Bush, 603.

The case upon which those decisions rest is that of the Commonwealth v. Miller, 5 Dana, 320, where it is expressly held that while the magistrate had jurisdiction to impose a fine for a breach of the peace, it was "not the only *delictum* for which an indictment could be maintained for the assault and battery;" but as the assault constituted the breach of the peace, it was a bar. But we are not left at sea in the construction of these statutes, limiting the fine, in case of a breach of the peace, first to twenty dollars, and then, by the General Statutes, to one hundred dollars and fifty days' imprisonment.

Chief Justice Robertson delivered the opinion in the case of Dickerson v. The Commonwealth, 2 Bush, 1, where the fine for an assault and battery was two hunred and fifty dollars, and in the case of Chandler v.

The Commonwealth, 1 Bush, 41, the fine was fifteen hundred dollars for the assault, showing plainly that these statutes afford no guide to the infliction of punishment in such cases, and the court is left to punish the offender under the common law, which is fine and imprisonment, or either or both, at the discretion of the jury.

The remaining question to be decided is one that has received more consideration than any other point involved, and that is as to what limitation, if any, is, or should be, placed upon the discretion of the jury in fixing the punishment.

Our statute in regard to crimes and punishments provides, that "if any person shall, in sudden heat and passion, without previous malice, and not in self-defense, shoot and wound another person with a gun or other instrument, * * * or shall, in like manner, cut, thrust or stab with a knife, dirk or other deadly weapon, without killing such person, he shall be fined not less than fifty nor more than five hundred dollars, or confined in jail not less than six months nor more than one year, or both, in the discretion of a jury." (Gen. Stats., chap. 29, art. 17, sec. 1.) Where the shooting is with intent to kill, without wounding, the confinement is the same. Where malice exists, and a wound is inflicted with the intent to kill, not producing death, the punishment is confinement in the penitentiary for not less than one nor more than five years.

It is urged that in the present instance the jury is invested with the power to deprive the accused of his whole estate, or imprison him for life, for an offense less in degree than a felony, and less in degree than in

shooting and wounding in sudden heat and passion, and, therefore, some limitation should be placed upon this judicial discretion. In the first place, the punishment by imprisonment for life for offenses of this character could not be inflicted under any rule of the common law, and it is only in cases where the offense by statute is made a felony that this severe punishment was annexed, and then for assaults on those high in authority, in either church or State. Here no such questions can arise, but a jury of twelve men, that has, since the existence of magna charta, been invested with the discretion, under the guidance of impartial judges, of passing on the personal liberty of the citizen, and of life itself, is called upon to fix, in its discretion, the extent of the punishment that shall be inflicted for the commission of an aggravated assault and battery—a tribunal connected with the administration of justice that is always ready to protect those charged with offenses from any attack of arbitrary power. We know of no tribunal where such discretion could be more safely lodged. There is a manifest difference between the effect of an imprisonment for high crimes and the punishment for a misdemeanor. The one is assigned to a felon's cell at hard labor, while the other is required to pay a fine, and imprisoned in the jail of his county.

Some of the offenses known as misdemeanors were of such frequent occurrence in this State as to attract legislative attention—such as shooting and wounding another in sudden heat and passion, or shooting at another without inflicting a wound. Statutes have been passed imposing penalties severe in their character in such

cases, for the reason that, under the common law rule, slight punishments were too often imposed by courts and juries; still those penalties are not to control or fix a limit to the punishment for aggravated assaults and batteries, or other high misdemeanors, where no statute has interposed. It is not necessary to draw a parallel between the enormity of the offenses mentioned and the one being considered.

There is a limitation for the protection of the citizen against all excessive punishment—that limitation is found in the second and seventeenth sections of the Bill of Rights, the second section providing "that absolute arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Section 17 provides "that excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."

For malicious shooting and wounding, with the intent to kill, the limit to the punishment being five years, and the offense a felony by our statute, might afford the judge on the bench some guide, on the motion for a new trial, in determining whether or not the jury had abused its discretion by the verdict in this case. No limit has been fixed by the Legislature to the punishment for this offense, and the court having no power to designate the limit, the jury exercising its discretion, it was then within the power of the court to set the verdict aside, if that discretion had been abused by the infliction of a cruel punishment. Was the punishment cruel and excessive?

If the law-making power (the Legislature) had undertaken to regulate the punishment for an assault and

Cornelison v. Commonwealth.

battery, attended with the lash of the cowhide on the back of its citizens, what would likely be the fine and imprisonment imposed? This was the question addressed to the court and jury trying this case, and in the exercise of their legal discretion they have annexed a punishment that this court will not disturb. Neither the court nor the jurors could have closed their eyes to the cruelty and enormity of the offense committed. None more humiliating or degrading could have been inflicted upon the person of the injured man, and nothing more calculated to render the life of the wrong-doer more insecure. Such an injury strikes at the very existence of society, and the punishment imposed is only commensurate with the injury done. To have taken the life of the assaulting party would have made Reid guilty of a still greater crime, and the submission by him without resistance to the cruel blows, whether from his peculiar mental and physical condition or his respect and reverence for the law, makes the necessity the greater for vindicating the wrong. The law should always inflict the punishment, and not the party who has suffered the injury.

Judgment affirmed.

Judge LEWIS dissenting.   Judge HOLT not sitting.

Judge LEWIS delivered the following dissenting opinion:

Under an instruction by the court, in substance, that if they believed the defendant willfully and maliciously, with intent to beat, wound or kill Richard Reid, made an assault upon him with a cane, stick

or cowhide, by striking, beating or wounding him, they must find him guilty of an assault and battery, and fix his punishment by fine *in any sum*, or by imprisonment in the county jail *for any period of time,* one or both, *in their discretion.* The jury in this case returned a verdict of guilty, and fixed the punishment at a fine of one cent and imprisonment in the county jail for *three years.*

I can not concur in, but dissent from, the opinion of the majority of the court sitting in this case.

The offense for which the defendant was indicted and tried is assault and battery, always deemed and treated at the common law as a misdemeanor, and never intended by the Legislature to be punished otherwise. But, under the instruction of the court, the jury was authorized, at their discretion, to punish the defendant by fine to the amount of his entire estate then owned or that he might ever acquire, and by imprisonment for an indefinite period, as well twenty-one as three years. And the punishment actually imposed by the verdict of the jury is, as compared with the following offenses made felonies, greater than the *minimum* punishment provided by statute for larceny, robbery or burglary, and greater than can be imposed in any case, whatever may be the circumstances, for maliciously assaulting, with a felonious intent to commit robbery upon a person; it is greater than that for unlawfully taking, without her consent, an unmarried girl under the age of fourteen years out of the possession of her parents without their consent; as great as the *maximum* punishment for detaining a child under ten years of age, with intent to deprive the parent of,

Cornelison v. Commonwealth.

or steal any article of ·value from, the person of such child; and greater than the *minimum* punishment for unlawfully detaining a woman against her will with intent to marry, or have her married to another, or with intent to have, or that another may have, carnal knowledge with her; it is greater than the *minimum* punishment for maiming the person, or maliciously shooting and wounding, or maliciously cutting or stabbing with a knife, sword or other deadly weapon with intent to kill, or for the ·despicable offense of maliciously administering poison to, or attempting to poison another, where death does not ensue.

If that instruction be the law, a person may for the offense of assault and battery, be lawfully imprisoned for a period of time terminated only by his death.

It seems to me, when a judgment comes before us thus obliterating the line dividing felonies from misdemeanors, and doing such violence to the reason and analogy of the law, it is time to look to the Constitution under which we live.

In section 2, article 13, of the Constitution it is declared, "that absolute arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority.".

The power to punish under semblance of authority, by fine and imprisonment, at discretion, without any fixed rule of law to limit the amount or duration, whether exercised by one or more than one, *is* arbitrary power in the meaning of the Constitution. It does not make any difference whether the punishment be confinement in the penitentiary or in the county jail; for to confine a person in either is to deprive him

of his liberty, which can not be done in any case arbitrarily. Nor does the fact that such power is lodged with juries, and its exercise made subject to revision by courts, alike freed from legal control or restraint, afford the certain and complete guaranty against oppression and wrong intended by the Constitution. For common experience teaches that a jury may sometimes drift with a strong current of unreasoning popular prejudice, and a timid judge may listen to clamor or bend to pressure. There can be *no* security for life, liberty and property without laws conservative of the fundamental principles of our government. The safety of society and of each member of it requires, and from the beginning the uniform policy of the Legislature has been, in accord with the Constitution and sentiments of the people, to provide by law that punishment for public offenses be inflicted only within prescribed *maximum* and *minimum* limits. And if the offense of assault and battery may now be punished by a different rule, it is an exception, and the fact that there is no reason whatever for such anomaly should, according to a safe rule of construction, be regarded as conclusive it was not intended to exist.

Appellant's counsel contend, that at common law, which it is argued governs in this case, the offense of assault and battery is punished by fine only. And to sustain the position, cite the case of Commonwealth v. Simmons, 6 J. J. Mar., 614, decided in 1831, Judge Robertson delivering the opinion. At the time that case was decided, the Court of Appeals had no jurisdiction of a penal offense for which there was any greater punishment than a fine. It was, therefore,

deemed by the court necessary to determine whether assault and battery, for which Simmons had been indicted, was punishable at common law by both fine and imprisonment, or by fine only. And the question being thus directly before the court, it was held that the offense could not be punished by imprisonment at all, and consequently the court took jurisdiction of the appeal in that case.

By the other side we have been referred to the case of Usher v. Commonwealth, 2 Duvall, 394, decided in 1866, Judge Marshall delivering the opinion. In that case Usher was indicted for the statutory offense of shooting at another with intent to kill or wound such person, denounced by section 1, article 17, chapter 28, Revised Statutes, and likewise in the General Statutes, the punishment for which was a fine *not exceeding five hundred dollars*, or imprisonment *not less than six nor more than twelve months*, or both, *in the discretion of the jury*. But the evidence on the trial did not show there was an actual shooting, but only that in the course of a violent assault and battery committed by Usher upon one Morris, or immediately upon its suspension, he got a pistol and aiming it at Morris, who was retreating from him, snapped it as many as three times. The circuit court instructed the jury in that case, that if they found the defendant guilty of unlawfully attempting to shoot at another, to fix his punishment at imprisonment *not exceeding twelve months*, or fine *not exceeding five hundred dollars*. And this court, in passing on that instruction, said : "We think, in prescribing the limit for the punishment in this case, the court paid no more than due respect to the

statute." It is true it was said in the same opinion that the offense of attempting to shoot another without actually shooting, is not described nor punished by statute, but was an offense at the common law, and punished at the discretion of the jury.

No notice was taken by either court in that case of the violent assault and battery committed on the same occasion. But both inadvertently fell into an error in assuming that attempting to shoot at another was at the common law technically a generic offense. The offense of which Usher was proved guilty, and in relation to which the instruction was given, was an assault committed by presenting and snapping his pistol at Morris within carrying distance, and of a lower degree than the one for which he was indicted, and being an assault, it was punished at the common law by imprisonment, or it was not so punished.

In the Simmons case, the question was directly and necessarily before the court and expressly decided. In the Usher case, the question of imprisonment was not before the court, nor necessary to be decided, for the verdict of the jury was for a fine only. Moreover, the opinion in the Simmons case is consistent, while that in the Usher case is not. For the kind and degree of punishment for assault and battery must, from necessity, be and is regulated exclusively by common law rules, or exclusively by statute, otherwise the attempt to inflict it in the manner and to the extent provided by one, would violate the other, unless they were identical, in which case the common law would be obsolete. If, then, the common law governs, and the punishment may be imposed at the discretion of the jury, it is so in

virtue of a statute putting the common law in force, which respect for another statute will not authorize the court to disregard. It was, however, the only way to escape the absurd result of holding that the common law governs at all as to the punishment for assault and battery, whereby the greater punishment may be inflicted for the lesser offense.

I am aware that there are other cases decided since 1831, hereafter noticed, in which judgment for fines exceeding the statutory limit have been affirmed, but there has been no one directly involving the question of imprisonment for assault and battery.

There appears to be some disagreement amongst text writers as to the ancient mode of punishing for assault and battery, and authorities are cited by counsel for the Commonwealth, and also in the opinion of the majority, for the purpose of showing that the offense is punishable at common law by both fine and imprisonment, and that the decision of this court in the Simmons case should not now be adhered to. But whether the weight of authority as to the common law be one way or the other, and whether the accused in this case should not have the benefit of whatever doubt there may be, I deem immaterial; for, in my opinion, the punishment is regulated wholly by the statutes of this State.

It is, however, proper to stop and seriously consider whether, assuming, as the majority does, that the punishment is determined by the common law, we should now, in order to affirm a judgment of unexampled severity, overrule and disregard the only judicial exposition of what the common law on the subject is

ever made by this court in any case, where the question of imprisonment was necessarily and directly involved and decided. Former decisions of this court, by which rules regulating property rights have been determined and settled, are, even when deemed erroneous, seldom if ever disturbed. It seems to me there is at least as good reason why a court of last resort, having once decided that a person could not, according to a particular law, be imprisoned, should not afterwards change its ruling without a change of the law.

In pursuance of the obvious policy of every State to provide by statute the mode and degree of punishment for each public offense committed within its own limits, the Legislature commenced, immediately after the organization of the State government, to provide a penal code adapted to the condition and necessities of the Commonwealth, and now there is scarcely an offense punishable at all that is not punished according to the statutes of the State. Is it to be presumed the Legislature has from the beginning purposely omitted the offense of assault and battery, of perhaps more frequent occurrence than any other, and left it to be regulated by the common law, the meaning of which is the principal subject of dispute even in this case?

By an act approved December 21, 1802, it was provided that if any riot, rout, unlawful assembly of the people, or *breach of the peace* be made or committed, the offender should be arrested, and on failure to give bail for his appearance before a justice of the peace for trial he should be put in jail, and if found guilty by a jury, the justice should proceed to punish him by fine, *not exceeding* twenty-five dollars. It was further pro-

vided, that on default of the officers to proceed against the offender in the time and manner prescribed in the act, "said offenses shall be punished as heretofore." An act of December 20, same session, is as follows: "Whereas, a mode of proceeding and punishing offenses has been provided by an act of assembly, differing in some cases from that which had before been provided by the common law, or by English statutes, it is enacted that in such cases the provisions of the common law or of the English statutes shall be, and are hereby, repealed." And by a third act of December 22, same session, it was provided, that "all laws and statutes which provide for the punishment of offenses for which other punishments are provided by act of assembly, are repealed." But in 1809 an act was passed, providing "that the common law in relation to riots, routs, unlawful assemblies of the people, assaults, batteries, affrays and breaches of the peace shall be, and the same is hereby, revived and declared to be in full force, and that any person or persons guilty of any of the aforesaid offenses may be indicted and punished at common law as heretofore, any law to the contrary notwithstanding, provided that this act shall not be so construed as to subject any person or persons to be twice punished for the same offense."

Section 3, article 1, chapter 29, General Statutes, is as follows: "A common law offense for which punishment is prescribed by statute, shall be punished *only in the mode prescribed.*"

The title of article 19, chapter 29, is "riots, routs and breaches of the peace," and the first three sections contain substantially the same provisions for the sum-

mary arrest of offenders as provided in the act of December 21, 1802, and the same as were in the Revised Statutes. Section 4 relates to the trial of persons arrested, and provides that if the jury believe the defendants, or any one or more of them, guilty, they shall be severally fined in a sum *not exceeding one hundred dollars*, or imprisoned *not exceeding fifty days*, or both so fined and imprisoned at the discretion of the jury." Section 6 of the same article is as follows: "Nothing in this article shall be construed to repeal the common law in relation to riots, routs, affrays, unlawful assemblies or breaches of the peace; which offenses may be punished as, and by the common law, as heretofore."

The General Statutes differs from the Revised Statutes only in regard to the extent of punishment, which in the latter is limited to thirty dollars and fifteen days' imprisonment, and differs from the act of December 21, 1802, as to the extent of punishment, and in giving to the jury instead of the justice of the peace the discretion to fix it. But the policy of limiting the punishment has been uniform and consistent throughout.

The principal question, then, is, whether assault and battery were intended by the Legislature to be included by the term "breach of the peace."

Assault and battery, one being an unlawful attempt or offer with force to do a corporal injury, and the other the actual use of such force, constitute, singly and combined, in law and in fact, a breach of the peace. An assault has always been held by this court a breach of the peace. And if it be more, it is so in the sense of being a personal injury for which a civil action may be

maintained, or being accompanied with an intent to do some act which is of a higher grade of offense than a breach of the peace. There is no distinct offense known as an aggravated assault. In England assaults are called aggravated, because committed in certain places, or against privileged classes, for which specific punishments were provided that have no place here. There are assaults with intent to kill, indicated by the use of means which ordinarily may produce death, such as are called deadly weapons, or with intent to rob, commit rape, etc., all of which are specially provided for by statute.

The offense charged in the indictment in this case is a misdemeanor, and for that, and not a felony, can the defendant be punished.

In Commonwealth v. English, decided in 1810, 2 Bibb, 80, the defendant was indicted for a battery, and though the judgment, which was for a fine exceeding the statutory limit, was affirmed, yet the offense was recognized by the court as coming under the head of breach of the peace, and being provided against by the act of 1802.

In Ely v. Thompson, 3 A. K. M., 70, assaults and batteries were held to be embraced by the act of 1802.

In Commonwealth v. Miller, 5 Dana, 320, the same construction was given to that act, the court using this language: "A judgment rendered under the act of 1802 for a breach of the peace committed by an assault and battery, is a bar to an indictment for the same assault and battery."

In Commonwealth v. Foster, 3 Met., 1, it was held that the Revised Statutes on the subject of riots, routs

and breaches of the peace were a substantial copy of the act of 1802, and a fine assessed for a breach of the peace was a bar to a subsequent indictment for an assault and battery.

In Commonwealth v. Hawkins, 11 Bush, 603, and Commonwealth v. Bright, 78 Ky., 238, the same construction was given to the General Statutes.

It thus appears that this court has uniformly held, that by the term "breach of the peace," as used in the act of 1802, the Revised and General Statutes, the offense of assault and battery is embraced, and a conviction for one is a bar to the prosecution for the other, on account of the same transaction.

We have been referred to several cases of assault and battery, in each of which the court affirmed the judgment exceeding the limit fixed by statute. The first, Bosley v. Commonwealth, 7 J. J. M., 598, decided in 1832, and the last, Dickerson v. Commonwealth, 2 Bush, 2, in 1867; the other two being March v. Commonwealth, 12 B. M., 25, and Chandler v. Commonwealth, 1 Bush, 41. But in none of them does the question of the unlimited discretion of the jury appear to have been raised or discussed. Nor has there been an attempt, in any of the cases mentioned, to construe the statutes so as to reconcile the apparent conflict between the acts of 1802 and 1809, nor that between section 3, article 1, and section 6, article 19, chapter 29, General Statutes, which are similar to corresponding sections in the Revised Statutes. But since the case of English v. Commonwealth, decided in 1810, where the acts of 1802 were construed without reference to the act of 1809, it seems to have been strangely assumed, that if the

trial for assault and battery was before a justice of the peace only, the punishment fixed by statute. could be imposed, while the common law, which prescribed a totally different and unlimited punishment, alone governed in the circuit court. And it has thus resulted, that according to the ruling of this court previous to 1874, when the case of White v. Commonwealth, 10 Bush, 557, was decided, the punishment to be imposed for assault and battery depended rather upon the tribunal before which the offender was tried and the law under which he was tried, statute or common law, than upon the merits of the case.

In the case of White v. Commonwealth, the defendant was indicted and tried for a breach of the peace, and adjudged to pay a fine of two hundred and fifty dollars, and the only question in the case grew out of the amount of the fine assessed, which was in excess of the limit of one hundred dollars prescribed in section 4, article 19, chapter 29, General Statutes. And the judgment was reversed upon the sole ground that the lower court erred in instructing the jury *they might assess the fine at their discretion.* In that case, as therein stated, this court was led by the apparent conflict between section 3, article 1, and section 6, article 19, for the first time, to look into the history of legislation in this State on that subject, and after a thorough investigation decided that the act of 1809 was intended to give the circuit courts jurisdiction concurrent with justices of the peace of prosecutions for offenses enumerated in that act (assault and battery being included), and not for the purpose of subjecting offenders to a greater punishment in the one court than in the

other, and for the same purpose section 6, article 19, which is similar to the act of 1809, was put into the General Statutes.

Said the court: "Section 4, article 19, chapter 29, General Statutes, prescribes a punishment for breaches of the peace; and if it be held that under section 6 of the same article a greater punishment than is thus prescribed can be inflicted under indictment in the circuit court, as and by the common law, the latter section is brought into direct conflict with section 3, article 1, which provides that a common law offense, the punishment of which is prescribed by statute, *shall only be punished in the mode so prescribed.*"

As said further in the opinion, the construction given "harmonizes section 6, article 19, with section 3, article 1, which could not be otherwise done, and it also prevents the legislative anomaly of providing different punishments for the same offense, which we can not presume the Legislature intended."

It is obvious that the construction of the statutes given in that case is the only one by which the apparent conflict between the two sections mentioned can be harmonized, and each of them be left in full force. It is equally obvious, if full force is given to section 4, article 19, the language of which can not be misunderstood, that for none of the offenses mentioned in that article can either fine or imprisonment be imposed beyond the limits therein prescribed. And assault and battery being, according to the ruling of this court, a breach of the peace in the meaning of that article, it inevitably follows that the instruction given in this case and the verdict of the jury are in violation of section 4, article 19.

The decision in the White case is utterly inconsistent with, and in effect overrules, all the preceding cases, holding that fine and imprisonment for assault and battery may be imposed without limit at the discretion of the jury. It has been acquiesced in by the Legislature, and adhered to by this court for twelve years, and was the law as held by this court when the offense in this case was committed, and being in harmony with the Constitution and the legislative policy of the State, as well as consistent and just, should not now be overruled to the prejudice of personal liberty, which must be done if the judgment in this case is affirmed.