## THE STATE *v.* JERRY JOHNSON.

The act of 1868'-9, c. 178, sub-c. iv., giving to Justices of the Peace, power to hear and determine criminal actions for certain petty offences, and among them, "assaults, and assaults and batteries, where no deadly weapon was used, and no serious damage was done, and where the punishment imposed by law does not exceed fifty dollars fine, or one month's imprisonment,"—is not unconstitutional.

As that act confines the jurisdiction of the Justice to such offences as are committed within his township, it cannot be exercised in counties where townships have not been laid off.

In such cases, the pleadings must show affirmatively, everything necessary to confer the jurisdiction relied upon therein.

ASSAULT AND BATTERY, tried before *Jones, J.,* at Spring Term 1870, of WASHINGTON Court.

The defendant pleaded, Former Conviction ; and, in support thereof, relied upon the fact that he had been tried and convicted for the same offence, by a Magistrate of the county. The *plea* did not state that the Magistrate who tried him, was a Justice of the Peace in and for the township in which the offence was committed. The *case* stated that at that time the county had not been laid off into townships.

STATE *v.* JOHNSON.

His Honor, being of opinion that the defence was made out, ordered the defendant to be discharged. The Solicitor for the State appealed.

*Attorney-General,* for the State.
*No counsel, contra.*

RODMAN, J. It is objected to the conviction in this case :

1. That the act of 1868–'69, conferring summary jurisdiction over certain petty offences on Justices of the Peace, is unconstitutional ;

2. That the Justice did not have jurisdiction in this case, because the offence is not alleged to have been committed in his township.

1. The Constitution, Art. IV, s. 33, provides, " The several Justices of the Peace shall have exclusive original jurisdiction under such regulations as the General Assembly shall provide"—" of all criminal matters arising within their counties, where the punishment *cannot* exceed a fine of fifty dollars, or imprisonment for one month."

The act of 1868–'69, ch. 178, sub-ch. IV, gives to Justices of the Peace, power to hear, try and determine in the manner therein prescribed, criminal actions for certain petty offences, and among them, " assaults, and assaults and batteries, where no deadly weapon was used, and no serious damage was done, and where the punishment imposed by law does not exceed fifty dollars fine, or one month's imprisonment." Sections 6 and 7, impose some limitations on the jurisdiction, which it is not necessary here more than to refer to.

Prior to the passage of this act, every assault was punishable by fine and imprisonment, at the discretion of the Court, and therefore, *might* be punished beyond the jurisdiction o

a Justice ; and it is argued, that this act does not expressly limit the punishment of any defined class of offences, but does so, if at all, only by implication, and therefore,. not sufficiently.    It may be that it would have been a more methodical arrangement, for the Legislature to have defined certain crimes in one statute, devoted to that subject, and to have enacted that the punishment of those coming within such definition, should not exceed the limit above mentioned ; and then, in another statute, devoted to the subject of criminal Courts and their jurisdiction, to have enacted that Justices of the Peace should have jurisdiction of the crimes so defined.    But when the intention is clear, a statute cannot fail of effect, merely because perhaps some of its provisions might be put in a more appropriate place.    We think the intention sufficiently appears from the statute in question. Sections 4, 6 and 7, separate with sufficient clearness certain assaults from the general class, and give to a Justice jurisdiction over these.    The act might have gone on, and said expressly, that " the punishment of these shall not exceed, &c."— ; but taking the language of the act, in connection with the Constitution, it seems to us that a plain and necessary implication limits the punishment as clearly as express words could.    It must be noted that the act in question, although in one sense it is a penal law, as dealing with penalties, yet, as it mitigates them, it is not a penal law in the sense of requiring to be strictly construed.

What the evil was, which was sought to be remedied by the act, is plain.    That the time and attention of the Courts of record were unduly occupied in the trial of petty offences, was a complaint long before the abolition of slavery.    Whether or not there was an actual increase of such offences, after that event, there was certainly a vast increase of them cognizable by the Court.    Previously, the great majority of such offences, when committed by slaves, were tried in the do-

mestic form; afterwards, all these were poured into the Courts, and occupied their time and attention, to the exclusion of civil actions, so completely that it amounted in many cases to a denial of justice. Now, the determination of controversies respecting property and civil rights, is just as much due to the people as the trial of persons charged with crime, and the Courts must do both, to satisfy the people with them and with the government. Nor was the evil of an exclusive jurisdiction in the Superior Courts, less to the offenders, than to the people generally. Often, persons accused of petty crimes were unable to find bail, and were imprisoned before trial much longer than was deemed an adequate punishment after they were found guilty. The expense of the system, was also most burdensome. The slow and costly process of trial by Court and jury, is only required in cases of difficulty or importance. Considerations like these have sufficed in every state and country, to give a summary jurisdiction of petty offences to local officers. In this case the dangers to be guarded against were two :

(1.) The Justice might punish with unmerited severity, even within the narrow limits of his power. This was provided against by giving to the defendant, the power to appeal ;

(2.) The Justice, through ignorance, or by a corrupt collusion with the offender, might punish the gravest offences with a mere nominal penalty, to the scandal of justice, and the detriment of the public morals ; this was provided against, as it is in the English law, by requiring that in every case, the party injured should make the complaint. When he thinks the offence so slight as to demand no punishment greater than what a Justice can inflict, the State may well agree to consider it so ; and if he thinks otherwise, the jurisdiction remains with the Superior Court. The act has not been in force long enough to permit an opinion of its effects,

from experience, but it seems well adapted to the ends in view, viz: 1. To relieve the Superior Courts of the pressure of petty business, and give them the time to perform the important duties for which they were more especially created: 2. To relieve the tax-payers from a heavy burden of unnecessary costs: and 3. To give petty offenders a speedy trial, and, (if guilty,) a speedy, but light punishment, in the place of a long imprisonment on the mere suspicion of guilt.

2. The second objection is more difficult, and indeed we think it fatal to the plea. The plea does not state that the offence of which the Justice took jurisdiction, was committed within his township; and it could not do so, as the case states that the county had not been divided into townships. It is a familiar principle, that when the judgment of an inferior Court, not of general jurisdiction, is pleaded, every thing must be shown necessary to give the Court jurisdiction. The act, sections 6 and 7, expressly confines the final jurisdiction of the Justice to offences committed within his township; it was competent to the Legislature so to confine it, and we cannot extend it. For this reason, we think there was error in the judgment below.

Let this opinion be certified.

PER CURIAM.               Reversed.