## STATE v. JOSEPH HUNTLEY.

*Assault and Battery upon defendant's wife—Jurisdiction—Deadly Weapon—Serious Damage.*

1. Where the defendant committed an assault and battery upon his wife with great violence, such as appears by the facts found in the special verdict here, *it was held*, that the serious damage done excluded the jurisdiction of a justice of the peace to hear and determine the case.

2. The question as to what is a "deadly weapon" and what is "serious damage," under the statute giving jurisdiction to justices to try assaults, &c., discussed by MERRIMON, J.

(SMITH, C. J., dissenting.)

(*State* v. *Johnson*, 64 N. C., 581; *State* v. *Pettie*, 80 N. C., 367, cited and approved.)

INDICTMENT for assault and battery, tried at Spring Term, 1884, of HAYWOOD Superior Court, before *Graves, J.*

The defendant was indicted for an assault and battery upon his wife "with a certain deadly weapon, to-wit, a stick," and "did beat, wound and seriously injure," &c., and upon the trial the jury found a special verdict as follows :

"The jury find that Rachel Huntley, upon whom the assault and battery is alleged in the bill of indictment to have been committed, was at the time of the alleged assault and battery the wife of the defendant; that within six months after the alleged assault and battery, complaint was made by one Evans before W. H. Faucett, a justice of the peace of Haywood county, and thereupon he issued his warrant and had the defendant brought before him and tried the case, and adjudged that there was no serious injury done, or deadly weapon used, and took final jurisdiction of the case, and adjudged the defendant guilty and imposed a fine upon him; that the facts in regard to the alleged

assault and battery we find to be, that within two years before the finding of the bill of indictment the defendant took an ordinary switch, not larger than the little finger of the usual size of a woman's hand, and with the switch whipped the said Rachel Huntley over her clothing on her back; that the whipping was continued for some time, not giving her more than twenty licks; that the whipping was of such violence as to break the skin and raise whelks upon her person, and to draw the blood, so that it came through her clothing so as to be seen on the outside of her clothing in three or four places; that the said Rachel was not so injured as to prevent her from going about and doing as usual. If upon these facts the defendant is in law guilty, we find him guilty; and if upon these facts the defendant is in law not guilty, we find him not guilty."

The court being of opinion that the facts found in the special verdict did not in law amount to serious injury, and being further of the opinion that the justice of the peace had final jurisdiction to try and determine the matter, directed a verdict of not guilty to be entered, and adjudged that the defendant go without day, from which judgment the solicitor for the state appealed.

*Attorney-General*, for the State.
No counsel for the defendant.

MERRIMON, J. The constitution (art. 1, § 13), provides that "No person shall be convicted of any crime, but by the unanimous verdict of a jury of good and lawful men in open court. The legislature may, however, provide other means of trial for petty misdemeanors, with the right of appeal."

And art. iv, § 27, among other things provides, that, "The several justices of the peace shall have jurisdiction under such regulations as the general assembly shall prescribe  *  *  *  of all criminal matters arising within their counties

where the punishment cannot exceed a fine of fifty dollars, or imprisonment for thirty days."

And the statute (THE CODE, § 892,) provides that "justices of the peace shall have exclusive original jurisdiction of all assaults, assaults and batteries, and affrays, where no deadly weapon is used and no serious damage is done, and of all criminal matters arising within their counties, where the punishment prescribed by law shall not exceed a fine of fifty dollars, or imprisonment for thirty days." The other provisions of the section are not material in this connection.

The clauses of the constitution and the statute above set forth harmonize, and are intended to effectuate the purpose of giving to justices of the peace jurisdiction of "petty misdemeanors," and thus promote good order, expedite and cheapen the administration of criminal justice in such respects. Petty misdemeanors imply small, little, trifling, inconsiderable offences, the punishment whereof cannot exceed fifty dollars fine or imprisonment for thirty days. They must be of such small importance as that the punishment of the offender could not reasonably exceed that measure, because the constitution limits the jurisdiction to such offences. In the absence of any statute prescribing the measure of punishment for assaults, assaults and batteries, affrays and like small misdemeanors, and thus bringing them within the jurisdiction of a justice of the peace as prescribed by the constitution, the statute cited conferring jurisdiction could be upheld upon no other ground. *State* v. *Johnson,* 64 N. C., 581. It is because the offence is so small, that the punishment could not exceed that mentioned, that the jurisdiction of the justice of the peace arises.

The statute cited, in effectuating the provisions of the constitution, confers on justices of the peace exclusive original jurisdiction when "no *deadly weapon is used* and no serious damage is done." This obviously means, that if a "deadly weapon" is used, a justice of the peace shall not have juris_

diction. This circumstance gives the offence a serious aspect and makes it important. Then what is a deadly weapon? It must be an instrument used, or, that may be used, for the purpose of offence or defence capable of producing death. Some weapons are *per se* deadly; others, owing to the manner in which they are used, become deadly. A gun, a pistol, or a dirk-knife, is of itself deadly; a small pocket knife, a walking cane, a switch of the size of a woman's finger, if strong and tough, may be made a deadly weapon if the aggressor shall use such instrument with great or furious violence, and especially, if the party assailed should have comparatively less power than the assailant, or be helpless and feeble. Hence, if a weapon not in itself deadly should be made so by its use, or the manner of using it, the justice of the peace could not have jurisdiction, when it had been so used. It is the *use* of a deadly weapon, not necessarily the use of it to the extent of fatal consequences, that excludes the jurisdiction. It is the use of such instrument that gives consequence to the offence.

The statute likewise confers upon a justice of the peace jurisdiction in the classes of cases mentioned, wherein "no *serious damage* is done." This does not imply pecuniary damage, nor does it imply merely physical damage, such as acute pain, or protracted bodily suffering, or the defacement of the person, or the impairment of physical power, or mental suffering; it means damage in one or more of these respects, but it implies as well and as certainly, damage to the peace, good order, decencies and proprieties of society. If the offence is such as to damage greatly the party assailed, or the offenders, or one or more of them, or, if it is calculated to outrage, stir up the wrath and disturb the quiet and good order of the community, if it shocks the moral sense of all good citizens, the justice of the peace would have no jurisdiction; such offence is not petty, small, trifling and of little importance in the eye of the law. The law requires

that offenders in such cases shall answer in the higher courts, where a judge, better fitted for such duties and of larger experience, may treat the offence more seriously, and impose adequate punishment before the larger community.

· In this case, it appears from the special verdict, that the defendant assaulted his wife with " an ordinary switch not larger than the little finger of the usual size of a woman's hand, and with the switch whipped the said Rachel Huntley over her clothing on her back ; that the whipping was continued for some time, not giving her more than twenty licks; that the whipping was of such violence as to break the skin and raise whelks upon her person and to draw the blood, so that it came through her clothing so as to be seen on the outside of her clothing in three or four places; but she was not so injured as to prevent her from going about and doing as usual.

It seems to us, that this recital of facts found by the jury, makes it manifest that " serious damage " was done to the woman ; the physical suffering must have been severe for a day or two, and more or less for several days; her mental suffering and humiliation, if she was an ordinary woman, must have been great; she must have been much weaker than her husband, and he whipped her with unusual violence, with an instrument that might be deadly, as applied to the back of a woman. Such offence was not petty.

There was also damage done to the peace, decencies and proprieties of the public. Such offence was calculated to outrage in a high degree, and stir up the wrath of the people, male and female, and provoke them to · violence and unlawful redress of the public grievance. Surely, if a man should thus violently whip a woman, or another man, or a boy, whom he could thus assault, it should be regarded as manifestly serious damage . to the individual assailed, and like damage to the good order of society, to say nothing of its decencies and proprieties.

We cannot doubt that there was "serious damage" in this case in the sense of the statute.

If it be granted that ordinarily the contentions, strifes and conflicts that sometimes unhappily disturb the peace of husband and wife ought not, upon grounds of policy, to be brought before the public, such a whipping as that inflicted by the defendant upon the back of his wife transcends all bounds of policy; and the offence against the public, leaving the victim out of view, is so great that the law requires that the offence shall be dealt with seriously in the higher courts where merited punishment may be imposed and a broad example made to deter others from perpetrating like offences.

If it be said that such a whipping in some possible cases would not be regarded as serious among some classes of people, the answer is, that the law knows no distinctions as to classes of people; it applies to all alike, and peace and good order must prevail everywhere and among all classes. Such offence, no matter by whom committed, in the eye of the law, is not petty but serious. It is clear that the justice of the peace had no jurisdiction to try the defendant, as it appears he undertook to do, and therefore, a verdict of guilty should have been entered. *State* v. *Pettie*, 80 N. C., 367.

There is error. A verdict of guilty must be entered, and further proceedings had according to law. To that end let this opinion be certified to the superior court. It is so ordered.

SMITH, C. J., (*dissenting*)   I find myself unable to agree with the other members of the court in the construction they put upon those provisions of THE CODE which confer and limit the criminal jurisdiction of justices of the peace. (Sections 892 and 987).

There are four specified forms of assault, dependent upon the character of the instrument or the intent with which

STATE *v.* HUNTLEY.

it is made, or the consequent injury to the party assailed, which, as demanding perhaps a severer punishment than he can inflict, the statute commits to the exclusive cognizance of a higher tribunal. If the assault be with intent to kill, or commit rape, which if perpetrated is a capital felony ; or with a deadly weapon, which endangers life; or if attended with " *serious damage*," the justice cannot try the offender. The association of the other assaults with one, the grade of which is determined by its actual results, seem to me to indicate that the " serious damage " was intended to take in those unenumerated cases where some permanent injury is inflicted, approaching in criminal turpitude the other assaults mentioned, and not to embrace transient injury or pain.

Without extenuating the conduct of the accused in any respect, we must put an interpretation upon this enactment of universal application in its terms, which is in consonance with the manifest general purpose ascertained by its surroundings.

It is of course difficult to define the line that separates damages which are not, from those which are *serious,* so as to give the precise import of the words, but I think clearly the severity of the present assault does not bring it within the meaning of the enactment.

PER CURIAM.                                        Reversed.