THE STATE v. MIKE SHELLY.

*Assault—Jurisdiction—Serious Damage—Presumption—Verdict—Former Conviction.*

1. Where it was shown that the defendant assaulted the prosecuting witness with his fist, knocked him down, jumped on him and beat him in a cruel manner, stunning him and badly injuring his eyes, but it did not appear that the injuries were permanent; *Held,* that this was "serious damage," and a justice of the peace had no jurisdiction of the offence.

2. The Superior Courts will be presumed to have acquired jurisdiction of simple assaults, and the burden is upon the defendant to show that the offence was committed within six months from the finding of the bill.

3. If the offence has been committed within six months from the finding of the bill, the indictment must allege that the assault was made with a deadly weapon, and describe it, or that serious damage was done, and set out its extent and nature.

4. A mistake in the verdict of a jury may be corrected before it is recorded and the jury discharged.

SMITH, C. J., dissenting.

(*State* v. *Huntley,* 91 N. C., 617, and *State* v. *Earnest,* at this term, cited).

The defendants, Mike Shelly, Delia Bryson and John Daneheart, were indicted and tried at the September Term, A. D. 1887, of the Criminal Court of New Hanover County, upon a charge of an assault and battery upon one Gustave

Friberg. Before the jury were empanelled the defendants all entered a plea of "former conviction," and also excepted to the jurisdiction of the Court, alleging that no deadly weapon was used and that there was no serious damage done.

Under the plea of "former conviction" the proof was, and it was not disputed, that soon after the assault occurred all three of the defendants above named repaired to the office of one Hall, a justice of the peace, in the city of Wilmington and county of New Hanover, and that one of the defendants, to-wit, John Daneheart, then and there made an affidavit, setting forth the assault, and that the aforesaid Gustave Friberg was not present, and that there was no proof before the said justice of the peace that any deadly weapon was used or serious damage done, and that the said justice of the peace had assumed final jurisdiction of the case and had rendered a judgment therein.

This assault was made upon the person of Gustave Friberg, in the kitchen of a sailor boarding-house, of which one of the defendants, Delia Bryson, is the proprietress.

The State's witness, Gustave Friberg, testified in substance that the defendant Delia Bryson wanted him to ship on a certain vessel, and that he refused to do so; that she and Shelly came into the kitchen and the doors were closed, and Shelly asked him if he was going to ship on the particular vessel in question, and when he refused to do so that Mike Shelly knocked him down and jumped on him, and beat him with his fist in a most cruel manner; that he was stunned and his brain was addled by the blows; that both of his eyes were badly injured by the blows; that one eye was getting better, but the other one was still closed and badly swollen.

The Court inspected the witness' eyes in the presence of the jury, while on the witness stand, for the purpose of determining the question of serious damage.

The assault was committed on Monday, and the trial was held on Thursday of the same week. On the trial one of the witness' eyes was firmly closed and badly swollen, so much so that it appeared to the Court, on close inspection, to protrude fully one inch from his eye-brow, or its natural position. It was very black, with some red places upon it, and presented a very ugly and peculiar appearance. He testified that he had opened the lids of this eye, to wash it, by using his fingers with considerable force or effect, and that when he did so the sight or vision was very dim and had been injured. He did not say that the sight was permanently injured. The other eye was not so much injured—the lids and surroundings were still black and looked bruised, but the lids were open and the sight good.

The defendant Mike Shelly stated on the stand that he struck the State's witness, Friberg, only one blow with his fist, and knocked him down, and that he did so because Friberg insulted him and tried to butt him.

The other defendants, Delia Bryson and John Daneheart, testified that they tried to part them while fighting, but both denied that they aided or abetted the defendant Shelly in any way.

It was also proved that the State's witness, Friberg, gave the cry of murder repeatedly, in a loud voice, while the defendant Shelly was beating him, and that several persons who were outside of the house were attracted by the noise created, and that three men entered the kitchen, who were attracted by the noise.

The Court was of the opinion that serious damage was done, according to the evidence in this case, and overruled the plea of "former conviction," and also the plea to the jurisdiction of the Court, and the defendant excepted.

There was no deadly weapon used.

While addressing the jury the counsel for the defendants said to the jury that he had nothing to say, so far as the de-

fendant Mike Shelly was concerned, and then went on to submit his argument in behalf of the defendants Delia Bryson and John Daneheart.

While the Solicitor was addressing the jury, he remarked that it was not worth while speaking about the defendant Mike Shelly, whose guilt was admitted, and then made an argument to show that the other defendants were also guilty.

When the jury returned to the Court room to render their verdict, the Clerk asked, in the usual way, if they had agreed on a verdict, whereupon the foreman answered, "the jury find the defendants not guilty." The Solicitor *immediately* requested the Court to inquire of the jury as to Mike Shelly, and the Court, seeing that the jury had made a mistake, asked them what was their verdict as to the defendant Mike Shelly, and immediately and simultaneously three or four members of the jury answered that the jury did not understand that they had to render any verdict as to him.

The Court then told the jury that all three of the defendants named in the bill of indictment were on trial, and that the jury must retire and render a verdict as to the defendant Mike Shelly. The jury retired, and in less than ten minutes returned and rendered a verdict of guilty as to Mike Shelly, and not guilty as to the other defendants.

The counsel for the defendants submitted a motion for a new trial, and also a motion to discharge the defendant Mike Shelly:

1st. Because the Court erred in overruling the plea of former conviction.

2d. Because the Court erred in assuming jurisdiction in this case, there being no serious damage proved.

3d. Because the Court refused the motion of defendants' counsel to discharge the defendant Mike Shelly, upon the ground that the jury had returned their first verdict of "not guilty" as to all of the defendants.

The Court refused the motion for a new trial, and also the motion to discharge the defendant Mike Shelly.

There was judgment, and the defendant appealed.

*The Attorney General,* for the State.

No counsel for the defendant.

MERRIMON, J.  We cannot hesitate to concur with the Court below in deciding that serious damage was done to the prosecuting witness by the ferocious and unprovoked beating inflicted upon him by the defendant, as charged in the indictment and proved on the trial.  The injury was not simply painful and humiliating—it disfigured the face, seriously bruised the eyes—closed one of them entirely for days, and probably permanently impaired the sight.  It seems to us that there can be no question that serious damage was done.  The justice of the peace, therefore, had no jurisdiction of the offence, and any judgment he undertook to render in a criminal action before him on that account was a nullity.

The plea of *autre fois convict* was properly not sustained. *State* v. *Huntley*, 91 N. C., 617.

The Criminal Court had jurisdiction of the simple assault and battery charged in the indictment, if more than six months elapsed next after the time when the offence was perpetrated, and before the beginning of the present action; and this is none the less so because the justice of the peace did not have jurisdiction.  The jurisdiction of the Criminal Court was presumed, and the burden was on the defendant to prove, as matter of defence, that less than six months so elapsed, in order to defeat it.  As no such defence was made, and no question in that respect was raised on the trial, it must be inferred that the Court had jurisdiction of the offence, as charged.  The presumption in favor of it was

not rebutted. *State* v. *Earnest*, decided at this term, and cases there cited.

It is true that the defendant might have been indicted—and it seems that regularly he ought to have been—for an assault and battery in which serious damage was done. The present indictment is not sufficient for that purpose, because it does not charge that serious damage was done, its nature and extent, but it charges the simple offence; and the Court having jurisdiction it could, as it did do, give an appropriate judgment upon the verdict of guilty. One advantage of charging the offence as one in which serious damage was done is, that the jurisdiction cannot be ousted by showing that six months had not lapsed, as above indicated.

It may seem somewhat singular that the justice of the peace had not jurisdiction of the offence as a simple assault and battery, and the Criminal Court had. The reason and explanation of such seeming inconsistency is, that the Criminal Court has the larger jurisdiction—it had jurisdiction of the simple offence as indicated, and as well and exclusively of the offence accompanied and rendered more aggravated by serious damage.

The error assigned as to the rendition of the verdict of the jury cannot be sustained. Before the Court received and entered it, at once it was suggested there was mistake and misapprehension of the jury, of which they became presently conscious upon explanation from the Court; they returned for further consideration of their verdict, corrected the error, and in a few minutes rendered a verdict of guilty, without hesitation. It would savor of trifling to allow so small an irregularity to delay, perhaps defeat justice, especially in a case in which plainly no injustice is done the party complaining.

The rights of the accused must be protected by every safeguard, but this does not imply that he is entitled to have substantial advantage—opportunity to defeat the ends of

STATE *v.* SHELLY.

justice—arising from slight immaterial irregularities that work no injustice to him. ' *State* v. *Bishop*, 73 N. C., 44.

There is no error. Let this opinion be certified to the Criminal Court according to law.

Affirmed.

SMITH, C. J., dissenting. The indictment is for a simple assault and battery, and fails to charge any matter in aggravation of the offence, or that any serious injury followed. On the trial the defendant showed, in his defence, that he had been convicted and punished for the offence before a justice of the peace, who had assumed and exercised jurisdiction over it. It was in evidence, however, that the assault was made with great violence, and the beating so excessive as to produce serious damage to the said Friberg (prosecutor), while no averment of such damage was contained in the warrant, so as to lift the crime to a higher grade and place it beyond the cognizance of the justice, except when investigating the matter as an examining magistrate. The accused is, therefore, put upon a second trial in the higher court *for the same offence* and charged in like form. If the indictment had further alleged that it was attended with "serious damage" to the person assaulted, specifying wherein it consisted, so that, upon inspection, it could be seen to belong to a superior jurisdiction, as required by *The Code*, §§ 892, 987, and the construction given those sections when enforced in *State* v. *Cunningham*, 94 N. C., 824, the jurisdiction would have been exclusive in the higher court, but in the absence of such allegations the case is one of simple assault, of which, for six months, the justice has sole cognizance, and afterwards concurrent with such court. As it is an unvarying principle of the criminal law that no one shall be twice punished under judicial sentence for the same offence, it results that if the jurisdiction assumed and, upon examination of the facts, exercised by the justice, is conferred by law, the plea of a former conviction necessarily

bars the present prosecution, for otherwise the accused would undergo a double punishment for one and the same act.

The case of *State* v. *Huntley*, 91 N. C., 617, does not dispose of the question now presented, for which there had been in that, as in this case, a trial and conviction before a justice of the peace, with similar pleas interposed upon the trial in the Superior Court. The special verdict presents the facts for the ruling of the Court upon the plea of not guilty, and this Court limited the inquiry to the infliction of serious damages, as affecting its own jurisdiction in the case.

What constitutes *serious damage* in the sense of the statute, as contradistinguished from the damage resulting from an assault, is a problem not of easy solution, and, in advance, to define the line of separation a difficult task, if practicable at all. In cases approximating the line much must be left to the sound judgment of the trying justice upon the facts before him, and such seems to be the character of our legislation on the subject. Bat. Rev., ch. 33, §§114 to 122, inclusive.

The justice, by these provisions, is to pass upon the nature and extent of the assault, and if it shall "*appear to him*" at the hearing "that a deadly weapon was used, or that any serious damage was done, or that the offence deserves a more severe or other punishment than it is within his jurisdiction to impose," he is to send the party to the Superior Court to answer the charge, thus making *his judgment of the demerits* of the criminal act the test of his own jurisdiction in entertaining it

Some change has been made in *The Code*, in order to a more distinct line of demarcation between the jurisdictions, than to leave it wholly to the justice's judgment as to what punishment ought to be inflicted, but still committing to him the determination of the question whether those additional facts exist that raise the offence up to a higher grade. *The Code*, §§896 and 897. Section 896 directs what the jus-

tice shall do when, upon investigating, he comes to the con-
clusion that he *has not final jurisdiction*.

The other section is in these words: "When the *justice
shall be satisfied* that he has jurisdiction, if no jury shall be
asked for, he shall proceed to determine the case, and shall
either acquit the accused or find him guilty, and sentence
him to such punishment as the case may require, not to ex-
ceed, in any case, a fine of fifty dollars or imprisonment in
the county jail for thirty days."

Most plainly, to my mind, this commits to his adjudication
the question whether the damages are serious, within the
purview of the act, and when he "*shall be satisfied*" upon the
point he must proceed with the trial, and punish if the ac-
cused is guilty.    This is mandatory upon him when he
makes his adjudication, and can it ! e that, after this punish-
ment he can be punished again because the Court or jury in
the Superior Court may come to a different conclusion as to
the extent of the damage done?    If this be so, there would
seem to be no escape from a double penalty.

I do not include in the proposition cases where a deadly
weapon, so designated by law, as a pistol, dirk or knife, has
been in the assailant's hands, because the law determines the
character of such an assault, but such as the present, and
those in which the instrument is deadly, *not per se*, but by
the manner and conditions under which it is used, as ex-
plained *supra*.    It may be, that if the charge was in form of
an offence cognizable only in the Superior Court, the justice
should examine only as a committing magistrate, with a
view of binding over, but when the charge is not such upon
its face, but of an act unaccompanied with matters in aggra-
vation, and these only appear and are developed in the
evidence, he must determine, as in our case, the extent of the
injury and of the damage done, and whether the damage is
or is not serious, and his action consequent upon the results
of the inquiry, as the accused cannot escape from the pun-

ishment imposed, and ought to be protected against another prosecution for the same act.

There is no suggestion in the record that a fraud was practiced upon the jurisdiction of the Criminal Court and that the trial in the justice's court was resorted to as a scheme to evade the just responsibility incurred by the accused; and if so, the double punishment would be caused by his own voluntary action in the premises, and the first trial would be no obstacle to the second. But when the jurisdiction is *bona fide* exercised, and such it must be assumed to have been in the absence of any imputation, the great and fundamental principle must be maintained, that no person should be twice punished by judicial tribunals, having rightful cognizance of the offence, for one and the same act.