STATE v. DOCK HEFNER, CECIL HEFNER AND CHARLIE WARREN.

(Filed 3 December, 1930.)

**1. Assault B a—Elements of offense of assault with deadly weapon with an intent to kill.**

In order for a conviction of crime under the provisions of C. S., 4214, there must be a charge and evidence thereon of five essential elements: an assault, the use of a deadly weapon, the intent to kill, infliction of serious injury, death not resulting, and *Held:* while an assault does not necessarily include a battery, where serious injury is inflicted a battery is necessarily implied.

**2. Same—Evidence of infliction of serious injury held sufficient in this case.**

Evidence that several defendants indicted under the provisions of C. S., 4214, were discovered selling liquor in violation of our prohibition law, and that they were armed with pistols and blackjacks and acted in concert, and that one of them threatened the life of the officer attempting to arrest them, and that the others participated by carrying the officer to a room of a garage where they beat him with a blackjack into unconsciousness, and carried him out into a field and left him there where later and alone he recovered consciousness, is sufficient for the conviction of them all of an assault with a deadly weapon with intent to kill, resulting in serious injury, in violation of the statute.

**3. Same—Evidence of use of deadly weapon held sufficient in this case.**

Where the evidence against the defendants, tried under an indictment for violating C. S., 4214, tends to show an assault with a blackjack and other like instruments whereby they beat the one assaulted into unconsciousness and carried him into a field where alone he eventually recovered consciousness, is sufficient as to the use of a deadly weapon in making the assault.

**4. Criminal Law L e—Error in instruction in this case held to be harmless under the evidence, and defendant not entitled to new trial therefor.**

Where the evidence is sufficient of an assault with a deadly weapon with intent to kill, not resulting in death, a charge by the judge to the jury that "serious injury" included "anything that would cause a breach of the peace," is held not to be reversible error to the defendant's prejudice where all the evidence tends to show that serious injury was inflicted in violation of the statute.

**5. Criminal Law I j—Where evidence tends to show at least guilt of lesser degree of offense charged a motion of nonsuit is properly denied.**

Where the defendants are tried for violating C. S., 4214, in making an assault with a deadly weapon with intent to kill, etc., the action will not be dismissed when the undisputed evidence tends to show the assault was made with a deadly weapon.

APPEAL by defendants from *Stack, J.,* at February Term, 1930, of CATAWBA. No error.

The defendants were indicted and convicted under C. S., 4214, for an assault on Carroll Barringer with intent to kill and the infliction of serious injury not resulting in death. At the trial they neither testified nor introduced any witness in their behalf. The evidence for the State tended to show the following circumstances: Barringer was a deputy sheriff of Catawba County. After a conference between Sheriff Beal and Mrs. Candace Shook, she, her son, and Barringer went in a car from Newton to Hickory on the evening of 21 April, 1929. They arrived at Hickory about 7:30 and went to the garage of the defendant, Dock Hefner. All the defendants were there. Mrs. Shook told Dock she wished to buy five gallons of whiskey, and he promised to have it there in 25 or 30 minutes. Dock and Cecil went away in a car and within half an hour returned with a wooden-covered five-gallon can, which Dock and Charlie Warren put in Mrs. Shook's car. Cecil Hefner backed the other car out of the building. When he returned Barringer showed the defendants his official badge and told them he would have to arrest them. Dock Hefner and Warren "flew into a passion." Dock said, "Look what the ......... brought in here with her. Kill the .. .. ." He then took the can from Mrs. Shook's car, put it in another, and carried it from the building. Returning, he again cried out, "Kill the ........." Mrs. Shook "left there." Standing near by, Warren drew a pistol on Barringer and inquired, "Now, ., what do you think of this?" Barringer seized Warren's right wrist with his left hand and Warren caught Barringer's right arm with his left hand. Dock remarked, "We will take him into the back room and kill him." While Warren pulled, Dock and Cecil pushed Barringer into the back room. Dock took a blackjack from the blanket of a cot; Cecil took hold of Barringer's pistol; Warren and Barringer released each other; and Dock got a double-barreled shotgun and loaded it. One of the defendants said, "Now run, ..........., if you think anything of your life, run d——n fast." At that time Dock had his gun drawn and Warren had his pistol drawn on Barringer. Dock suggested that he "get that . ...... . automobile and get out of here." As Barringer went to the car Dock used this language: "Leave that car here? Hell, no, we won't let him get out of here. I am going to kill the ......... right here." Thereupon Dock struck him on the right cheek with his hand and on the left side of his head with a blunt instrument, and then took from the floor a piece of timber an inch thick, an inch and a half wide, and about two and one-half or three feet long. What followed, Barringer could not relate. He lost consciousness, and when he recovered in half an hour later he was among weeds and grass in a vacant lot 200 yards from the garage. He did not know how he got there. He found a wound on his

ear, on the back of his head, and on his left hand; his flesh and skin had been torn off and his back had been sprained. For several days he suffered from his injuries.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*J. L. Murphy and Wilson Warlick for defendants.*

ADAMS, J. Section 4214 of the Consolidated Statutes is in these words: "Any person who assaults another with a deadly weapon with intent to kill, and inflicts serious injury not resulting in death, shall be guilty of a felony and shall be punished by imprisonment in the State prison or be worked on the county roads for a period not less than four months nor more than ten years."

The essential elements of the offense therein denounced are (1) an assault (2) with a deadly weapon (3) with intent to kill and (4) the infliction of a serious injury (5) not resulting in death.

An assault is an offer or attempt by force or violence to do injury to the person of another. While every battery includes an assault every assault does not include a battery; but an assault inflicting serious injury necessarily implies a battery, which is the unlawful application of force to the person of another by the aggressor himself, or by some substance which he puts in motion.

Shotguns and pistols *ex vi termini* import their deadly character, and the blackjack described by the witnesses may appropriately be classed among weapons which are likely to produce death or great bodily harm. *S. v. Collins*, 30 N. C., 407; *S. v. West*, 51 N. C., 505.

That there is evidence of an intent to kill there can be no doubt. Dock Hefner not only declared his purpose to take Barringer's life; he admonished his companions and allies to perpetrate the deed. All the defendants were acting in concert. The record, then, discloses ample evidence of an assault by the defendants with deadly weapons and with intent to kill.

The defense is founded upon two propositions: It is contended, in the first place, that the victim of the assault suffered only superficial injuries and none which can reasonably be deemed "serious" in contemplation of law. Considered in the light of the previous decisions of this Court, the injuries inflicted by the assault cannot be classified as superficial or trivial, or, indeed, as free from the gravest possibilities. In cases involving the question of "serious damage" or "serious injury" this Court has laid stress on the fact that the person assaulted suffered great bodily pain. In *S. v. Roseman*, 108 N. C., 765, it was held that

serious damage had been done by an assault on a woman with a whip which cut into her flesh; in *S. v. Shelly,* 98 N. C., 673, by an assault which had stunned the victim, addled his brain, and injured his eyes; and in *S. v. Huntley,* 91 N. C., 617, by an assault causing physical pain which was "severe for a day or two and more or less severe for several days," although the Court seems to have considered also the mental suffering of the injured party, who was the assailant's wife.

In the present case the evidence tends to establish the fact that the defendants assaulted the officer with such violence as to leave him bruised and wounded and to deprive him of consciousness, and then carried him from the garage to a vacant lot two hundred yards away and left him there in the grass and weeds, probably under the impression that his death was a matter of moments. To say that such physical injury was not serious would be altogether inconsistent with former decisions dealing with the question. In the cases last cited the crucial term was "serious damage" as used in the statute relating to the criminal jurisdiction of justices of the peace (Code, 892; Revisal, 1427; C. S., 1481); but in *S. v. Earnest,* 98 N. C., 740, "serious damage" and "serious injury" were considered as synonymous terms. At any rate, as suggested in the State's brief, in enacting sections 1481 and 4214 of the Consolidated Statutes the General Assembly did not have in mind the distinction recognized in civil actions between *"damnum"* and *"injuria."*

In the second place the defendants contend that his Honor committed error by instructing the jury that "serious injury" means not only injury to the party assaulted, but "anything that would cause a serious breach of the peace." Similar language was used in *S. v. Huntley, supra;* but in *S. v. Strickland,* 192 N. C., 253, it was held that an inaccurate definition of the term will not be held for reversible error if upon all the evidence it clearly appears that serious injury was inflicted. To warrant reversal, error must be prejudicial. *S. v. Smith,* 164 N. C., 475; *S. v. Reagan,* 185 N. C., 710.

The trial court was correct in holding that the action should not be dismissed. If the injury was not serious or there was no intent to kill, as contended by the defendants, there remained undisputed evidence of an assault with deadly weapons. *S. v. Earnest, supra.*

No error.