STACY, C. J., concurring.
The defendant was tried at the stated term of Caldwell Superior Court upon a bill of indictment charging as follows:
"The Jurors for the State upon their oath present, That Albert Bentley, late of the County of Caldwell, on the 10th day of April, in the year of our Lord one thousand nine hundred and forty-three, with force and arms, at and in the County aforesaid, unlawfully, wilfully and feloniously did commit an assault with the intent to kill upon one Glenn Adkins with a certain deadly weapon, to wit: a shotgun and did then and there shoot him the said Glenn Adkins in the chest, hand and face thereby severing muscles, flesh, leaders, veins and causing the loss of the sight of one eye, which said felonious assault resulted in serious injury but did not result in death, against the form of the statute in such case made and provided and against the peace and dignity of the State."
The charge is brought under chapter 101, Public Laws of 1919, Michie's Code of 1939, section 4214, and the indictment follows the language of the statute.
The evidence of the State may be summarized as follows:
Glenn Adkins, upon whom the assault was committed, in company with his brother, drove up to defendant's house in the nighttime and parked the car, and then went up to the house and called, asking where Goldie McLean or Goldie Brown lived, and was informed that she lived *Page 564 
next door. Thereupon, witness went up to the indicated house and asked the people there if these folks had come in from work, and having been informed that they had not, he turned around and went back through the yard where the car was parked. Witness called defendant again and asked whether he knew if Goldie Brown or Goldie McLean had come in from work, and defendant replied that he didn't know anything about it and told him to leave. Witness stated that they were leaving the house when defendant reached and got a shotgun and presented it. There was further talk about whether the witness and his brother were going to leave, and when they were 40 or 50 yards from the house, defendant called, the witness turned, and just then defendant fired the gun and four shots went into Adkins' chest and one put out an eye. "The ball is there, but I cannot see out of it." Witness stated that he had never seen Bentley before and had had no cross words with him.
On cross-examination, witness stated that he was in the community looking for Goldie McLean; that he had been indicted for larceny of a middling of meat, but had been acquitted; and one time for driving under the influence of whiskey. He also had a little trouble in West Virginia, where they got him for being drunk.
Monty Adkins stated that he was with his brother Glenn on the night in question, and drove to defendant's house. They had gone to Valmead Cotton Mill and got to talking about seeing Lillie Brown, and turned back and went up there, driving a little while at a time, stopping and talking. They parked the car at the gate, walked up and hollered and inquired for Goldie McLean, and was told that she lived up the hollow. They went up there and asked if Lillie Brown was there, and Goldie McLean hollered and answered from the inside of the house that she had not come back from work. They started back to the car and seeing the light in Bentley's house, asked if Lillie Brown had come back from work. Bentley ordered them off the place and Glenn said they would be glad to go. While they were walking back to the corner of the yard, Bentley threw down a hatchet which he had, took a shotgun and presented it to them.
When the defendant first ordered them out of the yard, they were about fifteen feet from the door. When the shot was fired, witness testified they were about fifty feet away. While they were walking out they turned when defendant hollered, "I will see you fellows in a few minutes." This witness stated he got several shots, and his brother was shot on the knuckles and asked witness to drive.
Witness stated that both he and his brother were married and that they were out looking for women. He had heard some talk of Goldie McLean's reputation, but he was looking for Lillie Brown, who had the same reputation as Goldie McLean. After Mr. Bentley told them the *Page 565 
girl did not stay there, they stopped again and asked for her because they saw the light on. They thought they would find out whether she had come back. Witness had been drinking whiskey, but did not know whether his brother had or not; had no whiskey with them.
The defendant testified that he had just gotten back home from Elizabeth City when the Adkins brothers came up to the premises in a boisterous manner, speaking loudly and cursing, and had previously been running their car up and down the road practically all night. The brothers wanted to know where Lillie Brown lived and were informed that she did not stay there. They then started cursing defendant, who told them to get away, and was told that they would leave "when they got damned good and ready." The brothers then went up to the next house and after about ten minutes, came back and began to beat on the side of the house. It was then daylight, and defendant was sitting in a chair at the door. The Adkins brothers said that they wanted something to eat, wanted breakfast, and were told that defendant had no breakfast. They then began cursing defendant obscenely. Glenn Adkins and his brother stood cursing awhile and then went out into a private road between the two houses, stopped and began cursing again. Defendant got a single-barrel shotgun, went to his room and got shells, and found the brothers, when he returned, walking back up the road toward the house, and defendant told them to come no further. They replied that they would make shoestrings out of Bentley, and then Bentley told them to come no further or he would shoot. They were 30 to 40 yards away when he shot. He stated that he was afraid the two men would come back and knew he could not do anything with them unless he used some kind of weapon. They were pretty drunk. Defendant admitted that he had had trouble in court.
Josephine Seehan corroborated the defendant in the principal features of his testimony.
At the close of the State's evidence and at the close of all the evidence, defendant moved for judgment as of nonsuit, which was denied. The case was submitted to the jury, which rendered its verdict as follows: "That the said Albert Bentley is not guilty of `an assault with a deadly weapon with the intent to kill,' `not guilty of an assault with a deadly weapon doing serious injury,' and to the question of the Clerk as to how they did find, they replied: `Guilty of assault with a deadly weapon.'"
The defendant thereupon, through his counsel, moved the court that he be discharged upon the ground that the issue upon which the jury returned a verdict of guilty was not submitted to it. Motion was overruled, and defendant excepted. Thereupon, the defendant moved in arrest of judgment for the reason that the verdict was insufficient to *Page 566 
support the judgment pronounced. The motion was overruled, and defendant excepted.
Judgment followed that the defendant be confined in the common jail of Caldwell County for six months and assigned to work on the roads under the control and supervision of the State Highway and Public Works Commission.
Whereupon, the defendant appealed, assigning error.
Defendant's challenge to the trial draws into the discussion the verdict, the evidence, and a relevant part of the instructions to the jury. It is in their correlation the defendant finds reason for his discharge; and in the same correlation, the State finds cause for his detention.
In some features the case at bar closely resembles S. v. Gregory, ante, 415. We refer to it for an analysis of the statute under which the present indictment was brought, and for a discussion of the validity of convictions thereunder of lesser grades of assault than that charged. C. S., 4639; S.v. Goff, 205 N.C. 545, 551, 172 S.E. 407; S. v. Hefner, 199 N.C. 778,155 S.E. 879; S. v. Strickland, 192 N.C. 253, 134 S.E. 850.
Defendant has addressed no argument to the support of his general demurrer to the evidence, and the exception is presumably abandoned. Rule 28; In re Will of Beard, 202 N.C. 661, 163 S.E. 749; Gray v.Cartwright, 174 N.C. 49, 93 S.E. 432.
The exception to the refusal to discharge the defendant, counsel does, however, argue specially that there was no evidence pointing to the offense of "assault with a deadly weapon" upon which the sentence of the court rested.
If we are to understand the appellant to base his demand for discharge merely on the fact that the jury by an act of grace has found him guilty of a minor offense, of which there is no evidence, instead of the more serious offense charged, this is to look a gift horse in the mouth; more especially, since the conclusion that there is no evidence must be reached by conceding that all the evidence, including the admission of the defendant, points to a graver crime. Such verdicts occur now and then, despite the efforts of the courts to discourage them. When they do, although illogical or even incongruous, since they are favorable to the accused, it is settled law that they will not be disturbed. S. v.Robertson, *Page 567 210 N.C. 266, 186 S.E. 247; S. v. Smith, 201 N.C. 494, 160 S.E. 577; S.v. Cox, 201 N.C. 357, 160 S.E. 358; S. v. Spain, 201 N.C. 571, 573,160 S.E. 834; S. v. Ratcliff, 199 N.C. 9, 153 S.E. 605; S. v.Johnston, 119 N.C. 883, 26 S.E. 163.
We consider the motion in arrest of judgment. This is predicated upon the instructions to the jury that they might find the defendant "guilty as charged, guilty of assault with a deadly weapon doing serious injury, or acquit." It is argued that this instruction had the effect of resolving the charge into a bill with counts containing the offenses actually listed, and that the omission to charge the jury that they might find the defendant guilty of an assault with a deadly weapon withdrew that offense from their consideration, with the result that the verdict is tantamount to an acquittal. In support of this, counsel cites and quotes S. v. Thompson,95 N.C. 596:
"If upon the trial of an indictment, containing several counts, the jury is directed to confine its investigation to one count only, a general verdict of guilty will be construed as an acquittal on all the counts withdrawn from the consideration of the jury."
There is early precedent for a bill of indictment containing counts, in which various types of assault are separately charged; S. v. McNeill,75 N.C. 15 — to which we refer below. However, where the indictment is for a specific statutory crime, as it is here, under C. S., 4214, that practice is not followed and is not recommended. The crimes of which the defendant might be found guilty under the indictment in the case at bar were still before the jury and their warrant for so finding remained in the statute.
If there is an anomaly here, it is brought about by pertinent statutes; and in dealing with it the Superior Court has for a long time been able to discharge its duty and live at peace with the law. Under C. S., 564, the judge must confine himself to the evidence in giving his instructions to the jury: "He shall state in a plain and correct manner the evidence given in the case and declare and explain the law rising thereon." Instruction under the statute is the law geared to the facts. In informing the jury as to their duty, we have never held that it is incumbent on the court, under this statute, to go beyond the evidence or advise the jury they may ignore its absence and find the accused guilty of a minor offense, which could only be reached by the process of arbitration. S. v. Cox, supra; S. v.Spain, supra. Frankly, however, it seems to be conceded that such is the privilege of the jury under the statutes cited. It is more than questionable whether the court can, by any sort of restriction, withdraw from the jury a power it derives from a positive statute. At any rate, the court has not attempted to do so through the doubtful expedient of rationalizing the law. *Page 568 
The omissions of "assault with a deadly weapon" from the catalogue of permissible verdicts did not deprive the jury of the statutory authority to consider it.
The jury, however, not only found the defendant guilty of assault with adeadly weapon, but it acquitted him in a previous part of the verdict ofassault with a deadly weapon doing serious injury. It is contended that there is no specific offense known as "assault with a deadly weapon doing serious injury" and that, therefore, the clause "doing serious injury" must be regarded as surplusage, with the result that the defendant in one part of the verdict stands acquitted of assault with a deadly weapon, while in a later part of the verdict he is found guilty of that offense, which should entitle him to his discharge on his motion in arrest of judgment. The history of legislation on the subject of assaults and precedent based thereon do not support this contention.
Chapter 167, Laws of 1868-69, dealing with punishment of assaults, sets up a scheme somewhat similar to C. S., 4215, by which assaults are classified and punished according to specified aggravations of the offense. That law was repealed by the Laws of 1870-71, whereby, with certain exceptions, the named offenses were reduced from felonies to misdemeanors.S. v. Smith, 174 N.C. 804, 93 S.E. 910; S. v. Tyson, ante, 492, 494. However, the 1919 Statute — C. S., 4215 — carries forward the main features of the Laws of 1870-71, classifying assaults with or without aggravation for the purpose of fixing the punishment:
"4215. PUNISHMENT FOR ASSAULT. In all cases of assault, with or without intent to kill or injure, the person convicted shall be punished by fine or imprisonment, or both, at the discretion of the court: Provided, that where no deadly weapon has been used and no serious damage done, the punishment in assaults, assaults and batteries, and affrays shall not exceed a fine of fifty dollars or imprisonment for thirty days; but this proviso shall not apply to cases of assault with intent to kill," etc.
In S. v. McNeill, supra, the defendant was indicted under the Laws of 1868-69 on a bill containing three counts: The first for an assault with a deadly weapon, with intent to kill; the second, for an assault with adeadly weapon, with intent to injure; and the third for a common assault and battery. The court, we think properly, entertained the count for an assault with a deadly weapon, with intent to injure — although we are not aware that this had been set up separately as a statutory offense or that it was so regarded at common law. The point is, no matter whether we consider classification of assaults in the statute defining their punishment as creating, by necessary inference, statutory offenses of a distinct nature — and we do not intend to so decide — or whether the practice has been to submit to the jury along with the basic assault the distinguishing circumstances of aggravation, which we think more likely, we do not *Page 569 
find in the instant case a serious departure from practice in the instructions or the response by the jury.
We are of the opinion that the clause "doing no serious injury" cannot be regarded as surplusage. It was responsive both to the charge of the court and the wording of the statute, and merely amounts to a finding that the assault produced no serious injury. When the proposition was formally presented to the jury on an integral basis, they had to accept it or reject it, and would scarcely undertake to analyze it or "spell it out."
Taken in connection with the evidence and the charge of the court — S. v. Jones, 211 N.C. 735, 190 S.E. 733; S. v. Whitley, 208 N.C. 661,664, 182 S.E. 338 — we think the verdict is acceptable in law, and its effect is to find the defendant guilty of assault with a deadly weapon — and no more. It is sufficient to sustain the judgment.
We find
No error.